## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP., a Delaware corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 08-C-954** |
| **v.** | ) ) | **Honorable Judge Guzman** |
| **MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company; FIRST HARTFORD CAPITAL CORP., a Connecticut corporation; FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation and ROBERT V. MATTHEWS,** | ) ) ) ) ) ) ) ) | **Magistrate Judge Schenkier** |
| **Defendants.** | ) ) | |

## MOTION FOR ENTRY OF JUDGEMENT ON THE PLEADINGS AND CONFESSION OF JUDGMENT

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, plaintiff Merrill Lynch Commercial Finance Corp., successor to Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch" or "Plaintiff"), through counsel, hereby moves the Court to enter a judgment on the pleadings and a confession of judgment in favor of Plaintiff against Defendants Matthews Ventures Holdings LLC, First Hartford Capital Corp., First Wallingford Capital Corp. and Robert V. Matthews (collectively "Defendants"). In support of its Motion, the Plaintiff states as follows:

1.      On Thursday, February 14, 2008, the Plaintiff filed a Complaint in this action seeking to recover for breach of contract.

2.      On March 26, 2008, Merrill Lynch and Defendants entered into a Forbearance Agreement, attached hereto as <u>Exhibit 1</u>, in which Merrill Lynch agreed to forbear from proceeding in this matter for sixty (60) days.  Unless otherwise defined herein, all capitalized

terms used in this Motion shall have the meanings ascribed to them in the Forbearance Agreement.

3.      On April 9, 2008, Defendants filed their Answer to Complaint at Law, attached hereto as Exhibit 2, which admits substantially all of the allegations of the Complaint. Defendants' Answer admits liability and the principal and interest owed and accruing and merely lack knowledge of the amount of Merrill Lynch's attorneys' fees and costs of collection.

4.      As more fully set forth in  to the Affidavit of Edward Blough (the "Blough Affidavit) attached hereto as Exhibit 3, a "Termination Event" occurred under the Forbearance Agreement on May 27, 2008, terminating Merrill Lynch's forbearance, because Defendants had not repaid in full the Liabilities owed.  The Forbearance Agreement provides, in pertinent part:

> (c)      As used herein, the term "Termination Event" shall mean any one or more of the following events: ...; (iii) the failure of Obligors to repay all of the Liabilities on or before May 26, 2008; ....

Forbearance Agreement, § 3(c).

5.      Among the remedies provided under the Forbearance Agreement, the Defendants agreed that Merrill Lynch could confess judgment against them:

> (c)      From and after the occurrence of a Termination Event, each and every Obligor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against such Obligor for the unpaid amount of the Obligations as evidenced by an affidavit signed by an officer of Merrill Lynch setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal.  If a copy of this Agreement, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney.  Each Obligor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Merrill Lynch may elect until all Obligations have been paid in full.  Each Obligor hereby waives and releases any and all claims or causes of action which such Obligor might have against any attorney acting under the terms of authority which such Obligor has granted herein arising out of or connected with the confession of judgment hereunder.

Forbearance Agreement, § 6(c).

6.     As fully set forth in the Confession of Judgment attached as <u>Exhibit 4</u>, Merrill Lynch hereby confesses judgment against each of the Defendants, jointly and severally.

7.     As more fully set forth in the Blough Affidavit, Defendants jointly and severally, are indebted to Merrill Lynch in the amount of $2,691,167.93 as of the date of this motion.  With the accrual of interest to the date of hearing on June 4, 2008 at the rate of $660.07 per diem, plus the incurrence of attorneys' fees and costs of collection in connection with this motion in the amount of $4,270, the amount of the Liabilities will be $2,696,758.14  as of the hearing date.

WHEREFORE, Merrill Lynch Commercial Finance Corp. respectfully requests that this Court (1) enter judgment in its favor and against each of the Defendants, jointly and severally in the amount of $2,696,758.14, including Merrill Lynch's attorneys' fees and costs of suit in the amount of $25,727.50; (2) award post judgment interest at the applicable rate; and (3) grant such other and further relief as this Court deems appropriate.

Dated: June 2, 2008          Respectfully submitted,

MERRILL LYNCH COMMERCIAL FINANCE CORP.

By:    /s/J. Mark Fisher
          J. Mark Fisher (Illinois Bar No. 3121711)
          Melody R. Barron (Illinois Bar No. 6292346)
          SCHIFF HARDIN LLP
          6600 Sears Tower
          Chicago, Illinois  60606-6473
          (312) 258-5500 (phone)
          (312) 258-5700 (facsimile)
          mfisher@schiffhardin.com
          mbarron@schiffhardin.com

          *Its attorneys*

**MERRILL LYNCH MOTION
FOR ENTRY OF JUDGMENT ON THE PLEADINGS
AND CONFESSION OF JUDGMENT**

# EXHIBIT 1

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (this *"Agreement"*) is entered into as of March 26, 2008, by and among MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company (*"MVH"*), FIRST HARTFORD CAPITAL CORP., a Connecticut corporation ("FHCC"); FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation ("FWCC"), and ROBERT V. MATTHEWS (*"Matthews"*; Matthews, FHCC and FHCC are collectively referred to as "*Guarantor*" and Guarantor and MVH are sometimes referred to herein, individually as an *"Obligor"*, and collectively as the *"Obligors"*),and MERRILL LYNCH COMMERCIAL FINANCE CORP. , a Delaware corporation and successor to Merrill Lynch Business Financial Services Inc. (*"Merrill Lynch"*).

### RECITALS:

A.    Merrill Lynch has filed suit against the Obligors in an action entitled *Merrill Lynch Commercial Finance Corp. v. Matthews Ventures Holdings, et al.*, which is pending as case no. 08-C-954 (the "Action") in the United States District Court for the Northern District of Illinois (the "Court").

B.    Each of the Obligors was duly served with summons and the complaint in the action, a copy of which is attached hereto as <u>Exhibit 1</u> (the "Complaint"), and are in default for having failed to answer or plead to the Complaint.  Merrill Lynch has moved for the entry of a default judgment in the Action, a copy of which motion was duly served on each of the Obligors and is attached hereto as <u>Exhibit 2</u> (the "Motion").

C.    Each of the Obligors has reviewed the Complaint and Motion and acknowledges (i) the existence of the Events of Default under the Loan Agreement for non-payment of the Obligations alleged in the Complaint (the "Existing Defaults"), (ii) that the maturity of the Obligations were duly accelerated by Merrill Lynch, and (iii) that the amounts of the Obligations set forth in the Motion and supporting Affidavit of Edmond J. Blough are true and correct statements of the indebtedness owed by the Obligors, which is past due and payable from each of them to Merrill Lynch, without setoff or counterclaim.  As of March 18, 2008, each of the Obligors, jointly and severally, owed Merrill Lynch Obligations in the aggregate amount of $2,621,271.91.  The Obligations consist of a total principal balance of $2,376,263.07, plus an unpaid Commitment Fee of $16,875.00, plus an unpaid Amendment Fee of $25,000, plus $10,356.48 in late charges plus accrued interest of $83,783.22.  In addition, each Obligor's Obligations include Merrill Lynch's unreimbursed attorneys' fees and expenses relating to prior amendments or collection activities resolved by forbearance agreements dated before 2008 is $82,783.22, plus $25,770.75 in attorneys' fees and $454.34 in expenses in collection activities against Obligors after January 1, 2008 in connection with the Action.  Interest continues to accrue on the principal amount of the Obligations at the Default Rate, which is $726.08 per diem.

D.    Each of the Obligors desire that Merrill Lynch forbear from proceeding on the Motion so that they can repay, prior to the occurrence of a "Termination Event" (as defined below), the indebtedness and attorneys fees that they owe.

E.    Merrill Lynch is willing to forbear from proceeding with the Motion, but only on the terms and subject to the conditions set forth herein.

## AGREEMENTS:

In consideration of the premises set forth above, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Definitions</u>.  Unless otherwise defined herein, all capitalized terms used in this Agreement shall have the same meanings set forth in the Loan Agreement, to the extent defined therein.

2.    <u>Recitals</u>.    The recitals set forth above are hereby incorporated into this Agreement.  The Obligors hereby represent, warrant and agree that the matters set forth in the recital paragraphs A-E above are true and correct; and that any forbearance of Merrill Lynch is limited to the express terms of this Agreement.

3.    <u>Forbearance</u>.

(a)    On the terms, and subject to the conditions of this Agreement, until the occurrence of a Termination Event (defined below), Merrill Lynch agrees to forbear from proceeding with the Motion or otherwise seeking the entry of a judgment for default or judgment based on the pleadings filed in the Action, including the Answer (defined below) to be filed in the Action by Obligor.

(b)    Nothing shall prohibit Merrill Lynch from disclosing this Agreement to the Court in the Action or from proceeding in the Action as needed to maintain the Action or to comply with directions from the Court in the Action.

(c)    As used herein, the term *"Termination Event"* shall mean any one or more of the following events: (i) the occurrence of any Event of Default other than an Existing Default; (ii) any failure by any Obligor for any reason to comply with any covenant, condition or provision contained in this Agreement; (iii) the failure of Obligors to repay all of the Liabilities on or before May 26, 2008; (iii) any Obligor seeks to withdraw, amend, supersede or negate the admissions contained in the Answer that it filed in the Action without the prior written consent of Merrill Lynch, (iv) any representation made by any Obligor in this Agreement or pursuant to it proves to be incorrect or misleading in any material respect when made; or (v) any Obligor sells any real estate without paying to Merrill Lynch, for application to the Liabilities, the net proceeds of sale after brokerage commissions, closing costs and encumbrances senior to any mortgage or security interest granted to Merrill Lynch.

4.    <u>Reaffirmation, Waiver of Defenses and Release of Counterclaims</u>.

(a)    Each Obligor hereby reaffirms all covenants, representations and warranties made in the Loan Agreement and all other Loan Documents Agreements (after giving effect hereto).

(b)    Each of the Obligors hereby waives all defenses to the Complaint and reaffirms its obligations to pay the Liabilities, including, without limitation all fees, default interest and costs of collection, including Merrill Lynch's attorneys' and paralegal fees and costs incurred in the Action, the preparation of this Agreement and any other action, judicial or nonjudicial, for the enforcement of its Loan Documents or any judgment entered in respect thereof.

(c)    In order to induce Merrill Lynch to enter into this Agreement and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged by each of the undersigned, each of the Obligors, for itself and its shareholders and affiliates and the successors, assigns, heirs and representatives of each of the foregoing, does hereby fully, finally and unconditionally release and forever discharge Merrill Lynch and each of its shareholders, affiliates, agents, attorneys, employees, directors, and officers and the successors, assigns, heirs and representatives of each of the foregoing, from any and all debts, claims, obligations, damages, costs, attorneys' fees, suits, demands, liabilities, actions, proceedings and causes of action, in each case whether known or unknown, contingent or fixed, direct or indirect and of whatever nature or description and whether in law or in equity under contract, tort, statute or otherwise (collectively, *"Claims"*), which any of the Obligors has heretofore had, or now or hereafter can, shall or may have by reason of any act, omission or thing whatsoever done or omitted to be done on or prior to the date of this Agreement arising out of, connected with or related in any way to the Agreement, the Loan Agreement (including any predecessor agreement thereto) or any Loan Document (including without limitation any predecessor agreements thereto and any Guaranty), any proposal letter, commitment letter or term sheet, or any act, event or transaction related or attendant thereto, the agreements of Merrill Lynch contained therein, the possession, use, operation or control of any of the assets of any Obligor or any of their subsidiaries or affiliates, the making of any loans or advances or any real property or other Collateral pledged to Merrill Lynch by any Obligor as security for the Obligations.

5.    <u>Answer to Complaint</u>.  On or before April 9, 2008, each Obligor shall retain counsel to appear and file an answer in the Action admitting the material allegations of the Complaint, substantially in the form attached hereto as <u>Exhibit 3</u> (the "Answer").

6.    <u>Consent and Confession  to Judgment; Subsequent Foreclosure</u>.

(a)    From and after the occurrence of a Termination Event, each and every Obligor agrees that Merrill Lynch may in its sole discretion move for the entry of judgment in the Action against each Obligor, jointly and severally, for the amount of the Obligations then owed.  Upon filing of such motion, none of the Obligors, or any person at the direction or instigation of the Obligors, shall take any action to prevent, interfere with, delay or hinder the entry of such judgment or otherwise to hinder or to delay the Merrill Lynch's exercise of its remedy with respect to the collection of the Obligations or such judgment.  Without limiting the foregoing, none of the Obligors shall assert any defense to any motion for the entry of judgment or contest the amount of the Obligations.

(b)    From and after the occurrence of a Termination Event, and independent of any proceedings in the Action or the enforcement of any judgment entered therein, Merrill Lynch

may in its sole discretion commence foreclosure proceedings against any property securing the Obligations or any note, guaranty or other document evidencing the Obligations.

(c)     From and after the occurrence of a Termination Event, each and every Obligor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against such Obligor for the unpaid amount of the Obligations as evidenced by an affidavit signed by an officer of Merrill Lynch setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal.  If a copy of this Agreement, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney.  Each Obligor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.  No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Merrill Lynch may elect until all Obligations have been paid in full.  Each Obligor hereby waives and releases any and all claims or causes of action which such Obligor might have against any attorney acting under the terms of authority which such Obligor has granted herein arising out of or connected with the confession of judgment hereunder.

(d)     Each and every Obligor acknowledges and agrees that, immediately from and after the occurrence of a Termination Event: (i) Merrill Lynch shall have all of its rights and remedies with respect to the Existing Defaults and Loan Documents to the same extent, and with the same force and effect, as if the forbearance set forth in this Agreement had never been effective; (ii) it will not assert and hereby forever waives any right to assert that Merrill Lynch is obligated in any way to continue, after such Termination Event, to forbear from enforcing any of its rights or remedies or that Merrill Lynch is not entitled to act on the Existing Defaults or the Complaint after the occurrence of a Termination Event immediately and as if there had never been any forbearance; and (iii) Merrill Lynch is under no commitment of any kind with respect to reaching any agreement as to any amendment or waiver of any provision of the Loan Agreement or any other Loan Document or otherwise.

7.     <u>Forbearance Fee</u>.  Merrill Lynch acknowledges that it has received $50,000 as a non-refundable amendment fee.

8.     <u>Representations and Warranties of the Obligors</u>.  Each of the Obligors represents and warrants that:

(a)     IT HAS CONSULTED WITH LEGAL COUNSEL OF ITS CHOOSING PRIOR TO THE EXECUTION AND DELIVERY OF THIS AGREEMENT REGARDING ITS TERMS;

(b)     the execution and delivery by such Obligor of this Agreement and the performance of such Obligor's obligations hereunder: (i) are within the corporate powers of such Obligor; (ii) are duly authorized by the Board of Directors of such Obligor, and, if necessary, the stockholders of such Obligor; (iii) are not in contravention of the terms of the Charter or By-Laws of either Obligor, or of any contract, instrument, indenture or other agreement or undertaking to which either Obligor is a party or by which either Obligor or any of its property is

bound or any judgment, decree or order applicable to either Obligor; (iv) do not require any governmental consent, registration or approval or any filing with or notice to any governmental entity or agency; (v) do not contravene any governmental restriction binding upon either Obligor; and (vi) will not result in the imposition of any lien, charge, security interest or encumbrance upon any property of either Obligor under any indenture, mortgage, deed of trust, loan or credit agreement or other agreement or instrument to which either Obligor is a party or by which it or any of its property may be bound or affected (other than Liens in favor of Agent under the Loan Agreement);

(c)     this Agreement has been duly executed and delivered by each Obligor party thereto and constitutes the legal, valid and binding obligation of such Obligor, enforceable against such Obligor in accordance with its terms; and

(d)     each of the Loan Agreement and each of the other Loan Documents constitutes the legal, valid and binding obligation of the Obligor party thereto, and enforceable against such Obligor in accordance with its terms.

9.     <u>Reference to the Effect on the Loan Agreement.</u>

(a)     Except as otherwise specifically provided herein, all Loan Documents, and all other documents, instruments and agreements executed and/or delivered in connection therewith, shall remain in full force and effect, and are hereby ratified and confirmed.

(b)     The execution, delivery and effectiveness of this Agreement shall not (a) amend the Loan Agreement or any other Loan Document, (b) operate as a waiver of any right, power or remedy of Merrill Lynch including, without limitation, all rights, powers and remedies of Merrill Lynch existing as a result of the Existing Defaults, or (c) constitute a waiver of, or consent to any departure from, any provision of the Loan Agreement, or any other documents, instruments and agreements executed and/or delivered in connection therewith including, without limitation, the Existing Defaults. The Obligors acknowledge the existence of the Existing Defaults and confirm their understanding that Merrill Lynch reserves all of its rights and remedies with respect to the Existing Defaults (which rights and remedies may be exercised at any time with or without notice or demand subject only to the express terms of this Agreement).

(c)     This Agreement shall be deemed a Loan Document for the purposes of the Loan Agreement.

10.     <u>Governing Law</u>.    This Agreement shall be governed by and construed in accordance with the internal laws (as opposed to conflicts of law provisions) of the State of Illinois.

11.     <u>WAIVER OF JURY TRIAL</u>.    EACH OBLIGOR AND MERRILL LYNCH WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, BETWEEN MERRILL LYNCH AND ANY OBLIGOR ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT, THE LOAN AGREEMENT, ANY OTHER LOAN DOCUMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT

EXECUTED OR DELIVERED IN CONNECTION THEREWITH OR THE TRANSACTIONS RELATED THERETO.  EACH OBLIGOR AND MERRILL LYNCH HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

12.     <u>Headings</u>.     Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

13.     <u>Counterparts</u>.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  Delivery by any party of telecopied copies of executed counterparts hereof shall constitute execution and delivery hereof by such party.

14.     <u>Entire Agreement</u>.  This Agreement and the exhibits and annexes hereto embody the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, this Agreement has been duly executed as of the day and year first above written.

                                        **MERRILL LYNCH COMMERCIAL FINANCE CORP.**

                                        By: _____
                                            Edmond J. Blough
                                            Vice President


STATE OF ILLINOIS                       )
                                        )    ss.
COUNTY OF COOK                          )


The foregoing instrument was acknowledged before me this _____ day of
_____, 2008 by Edmond J. Blough of Merrill Lynch Commercial Finance Corp., on behalf of the corporation

        WITNESS my hand and official seal.

_____
Notary Public

```
OFFICIAL SEAL
MARLANA SANCHEZ-ZARINANA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/15/10
```

                                        **MATTHEWS VENTURES HOLDINGS LLC**


                                        By: _____
                                            Robert V. Matthews
                                            Its Manager


STATE OF FLORIDA                        )

-7-

**IN WITNESS WHEREOF**, this Agreement has been duly executed as of the day and year first above written.

                                        **MERRILL LYNCH BUSINESS FINANCIAL
                                        SERVICES INC.**

                                        By: _____
                                                Edmond J. Blough
                                                Vice President

STATE OF ILLINOIS                    )
                                     )   ss.
COUNTY OF COOK                       )

        The foregoing instrument was acknowledged before me this _____ day of _____, 2008 by Edmond J. Blough of Merrill Lynch Business Financial Services Inc., on behalf of the corporation

        WITNESS my hand and official seal.

_____

Notary Public

                                        **MATTHEWS VENTURES HOLDINGS LLC**

                                        By: _____
                                                Robert V. Matthews
                                                Its Manager

STATE OF FLORIDA                     )
                                     )   ss.

COUNTY OF Palm Beach                    )

       The foregoing instrument was acknowledged before me this ___8th___ day of ___April___, 2008 by Robert V. Matthews of Matthews Ventures Holdings LLC, on behalf of the corporation.

       WITNESS my hand and official seal.

_____
Notary Public

> CAREY A. HEBRANK
> Comm# DD0502827
> Expires 12/29/2009
> Bonded thru (800)432-4254
> Florida Notary Assn., Inc.

-8-

**ROBERT V. MATTHEWS**

_____

STATE OF FLORIDA )
) ss.
COUNTY OF  PALM BEACH )

The foregoing instrument was acknowledged before me this 8th day of _April_, 2008 by Robert V. Matthews.

WITNESS my hand and official seal.

_____
Notary Public

CAREY A. HEBRANK
Comm# DD0502827
Expires 12/29/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

**FIRST WALLINGFORD CAPITAL CORPORATION**

By: _____

Robert V. Matthews
President

STATE OF FLORIDA )
) ss.
COUNTY OF  PALM BEACH )

The foregoing instrument was acknowledged before me this 8th day of _April_, 2008 by Robert V. Matthews of First Wallingford Capital Corporation, on behalf of the corporation.

WITNESS my hand and official seal.

_____
Notary Public

CAREY A. HEBRANK
Comm# DD0502827
Expires 12/29/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

-9-

**FIRST HARTFORD CAPITAL CORP.**

By: _____

       Robert V. Matthews
       President

STATE OF FLORIDA            )
                         ) ss.
COUNTY OF  Palm Beach    )

      The foregoing instrument was acknowledged before me this _____ 8th day of
_____ April _____, 2008 by Robert V. Matthews of First Hartford Capital Corp., on behalf of the corporation.

WITNESS my hand and official seal.

_____
Notary Public

CH2\2412603.3

                           CAREY A. HEBRANK
                           Comm# DD0502827
                           Expires 12/29/2009
                     Bonded thru (800)432-4254
                     Florida Notary Assn., Inc

**FILED**

**FEBRUARY 14, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**08 C 954**

| | |
|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP., a Delaware corporation,** ) ) ) | |
| **Plaintiff,** ) | |
| ) | Case No. 08-C-_____ |
| **v.** ) | Honorable **JUDGE GUZMAN** |
| ) | **MAGISTRATE JUDGE SCHENKIER** |
| **MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company; FIRST HARTFORD CAPITAL CORP., a Connecticut corporation; FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation and ROBERT V. MATTHEWS,** ) ) ) ) ) ) | |
| **Defendants.** | |

## COMPLAINT

**MERRILL LYNCH COMMERCIAL FINANCE CORP.** ("Merrill Lynch), by and through its undersigned counsel, for its Complaint against Defendants MATTHEWS VENTURES HOLDINGS LLC ("MVH"); FIRST HARTFORD CAPITAL CORP. ("FHCC"), FIRST WALLINGFORD CAPITAL CORP. ("FWCC") and ROBERT V. MATTEWS ("Matthews"), hereby alleges as follows:

### THE PARTIES

1.      Merrill Lynch is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Chicago, Illinois and the assignee of the right, title and interest of Merrill Lynch Business Financial Services Inc. ("Lender") in, under and to the loans and the documents evidencing the loans and guaranties at issue in this case.

EXHIBIT 1

2.      MVH is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.  The sole member of MVH is Matthews, a resident of the State of Florida.

3.      FHCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

4.      FWCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

5.      Matthews is a resident of the State of Florida.

## JURISDICTION AND VENUE

6.      Jurisdiction over this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c) because Defendants' performance of a material part of their obligations to Merrill Lynch and a substantial part of the events giving rise to Merrill Lynch's claim occurred in this District.

## COUNT I: BREACH OF CONTRACT AGAINST MVH

8.      On or about December 5, 2003, Lender and MVH entered into that certain Term Loan and Security Agreement (as amended, the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.  Unless otherwise defined herein, all capitalized terms in this complaint shall have the meanings ascribed to them in the Loan Agreement.

9.      On or about December 5, 2003, Lender and MVH entered into that certain Collateral Installment Note (the "Note"), a true and correct copy of the Note is attached hereto as **Exhibit B**.

10.     On or about February 22, 2006, Lender, Matthews and MVH entered into that certain Forbearance Agreement (the "Forbearance Agreement").   A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit C**.

11.     MVH breached the Loan Agreement and Forbearance Agreement by failing to make the payments due under those agreements on November 1, 2007 and December 1, 2007 totaling $102,482.08 (the "Installments").

12.     MVH also breached the Loan Agreement and Forbearance Agreement by failing to make payments due under those agreements equal to the Net Proceeds of the property commonly known as One and Three Long Wharf Drive, New Haven, Connecticut following the sale of that property on or about February 5, 2007 (the "Proceeds").

13.     Despite demand, MVH failed and refused to pay the Installments or the Proceeds.  A true and correct copy of Lender's demand to MVH for payment (the "Demand and Notice of Acceleration") dated as of December 18, 2007 is attached hereto as **Exhibit D.**

14.     On December 28, 2007, all of the outstanding Obligations of MVH under the Loan Agreement and the indebtedness evidenced by the Note became due and payable pursuant to the notice and declaration contained in the Demand and Notice of Acceleration.

15.     As of December 28, 2007, MVH owed Obligations of $2,401,251.61 in principal, $47,698.91 in accrued interest as of the present time at the Default Rate as set out in the Forbearance Agreement, $9,727.09 in late charges as set forth in the Loan Agreement, and a $16,875.00 Commitment Fee, plus attorneys' fees and costs of collection.  Interest continues to accrue on such principal amount at the Default Rate, which is $726.08 per diem as of the date of this Complaint.

16.     Lender and Merrill Lynch fully performed their obligations under the Loan Agreement, Note and Forbearance Agreement.

17.     As a result of MVH's breaches, Merrill Lynch has been damaged in the amount of $2,475,552.61 plus interest at the Default Rate and its costs of collection.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against MVH: in the amount of (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

## COUNT II: BREACH OF CONTRACT AGAINST FHCC

18.     As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

19.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FHCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FHCC Guaranty"). A true and correct copy of the FHCC Guaranty is attached hereto as **Exhibit E**.

20.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FHCC Guaranty of the Obligations.

21.     Despite demand, FHCC failed and refused to pay the Obligations which it guaranteed pursuant to the FHCC Guaranty. A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

22.     As a result of FHCC's breach of the FHCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61 plus interest at the Default Rate and its costs of collection.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FHCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

### COUNT III: BREACH OF CONTRACT AGAINST FWCC

23.     As and for paragraph 23 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

24.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FWCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FWCC Guaranty").  A true and correct copy of the FWCC Guaranty is attached hereto as **Exhibit G**.

25.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FWCC Guaranty of the Obligations.

26.     Despite demand, FWCC failed and refused to pay the Obligations which it guaranteed pursuant to the FWCC Guaranty.  A true and correct copy of Merrill Lynch's demand to FWCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

27.    As a result of FWCC's breach of the FWCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FWCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

## COUNT IV: BREACH OF CONTRACT AGAINST MATTHEWS

28.    As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 17 as if fully set forth herein.

29.    On or about December 5, 2003, in connection with the Loan Agreement and Note, Matthews executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "Matthews Guaranty").  A true and correct copy of the Matthews Guaranty is attached hereto as **Exhibit H**.

30.    On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the reaffirmation (the "Reaffirmation Agreement") whereby they reaffirmed the effectiveness of, among other things, the Matthews Guaranty of the Obligations.

31.    Despite demand, Matthews failed and refused to pay the Obligations which he guaranteed pursuant to the Matthews Guaranty.  A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

32.     As a result of Matthews' breach of the Matthews Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against Matthews: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

Dated: February 14, 2008          Respectfully submitted,

MERRILL LYNCH COMMERCIAL FINANCE CORP.


By:    /s/J. Mark Fisher
          J. Mark Fisher (Illinois Bar No. 3121711)
          Melody R. Barron (Illinois Bar No. 6292346)
          SCHIFF HARDIN LLP
          6600 Sears Tower
          Chicago, Illinois  60606-6473
          (312) 258-5500 (phone)
          (312) 258-5700 (facsimile)
          mfisher@schiffhardin.com
          mbarron@schiffhardin.com

          *Its attorneys*

CH2\1929514.5

-7-

**08 C 954**

**JUDGE GUZMAN**
**MAGISTRATE JUDGE SCHENKIER**

**MERRILL LYNCH COMPLAINT AGAINST**
**MVH, FHCC, FWCC AND MATTHEWS**

# EXHIBIT A

**⤷ Merrill Lynch**                                                    TERM LOAN AND SECURITY AGREEMENT

**TERM LOAN AND SECURITY AGREEMENT** dated as of December 5, 2003, between **MATTHEWS VENTURES HOLDINGS LLC**, a limited liability company organized and existing under the laws of the State of Connecticut having its principal office at 59 Elm St., New Haven, CT 06510 ("*Customer*"), and **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.**, a corporation organized and existing under the laws of the State of Delaware having its principal office at 222 North LaSalle Street, Chicago, IL 60601 ("*MLBFS*").

In consideration of the mutual covenants of the parties hereto, Customer and MLBFS hereby agree as follows:

## Article I. DEFINITIONS

**1.1 Specific Terms.** In addition to terms defined elsewhere in this Loan Agreement, when used herein the following terms shall have the following meanings:

"*Bankruptcy Event*" shall mean any of the following: (i) a proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, liquidation, winding up or receivership law or statute shall be commenced, filed or consented to by any Credit Party; or (ii) any such proceeding shall be filed against any Credit Party and shall not be dismissed or withdrawn within sixty (60) days after filing; or (iii) any Credit Party shall make a general assignment for the benefit of creditors; or (iv) any Credit Party shall generally fail to pay or admit in writing its inability to pay its debts as they become due; or (v) any Credit Party shall be adjudicated a bankrupt or insolvent; or (vi) any Credit Party shall take advantage of any other law or procedure for the relief of debtors or shall take any action for the purpose of or with a view towards effecting any of the foregoing; or (vii) a receiver, trustee, custodian, fiscal agent or similar official for any Credit Party or for any substantial part of any of their respective property or assets shall be sought by such Credit Party or appointed.

"*Business Day*" shall mean any day other than a Saturday, Sunday, federal holiday or other day on which the New York Stock Exchange is regularly closed.

"*Business Guarantor*" shall mean every Guarantor that is not a natural person.

"*Certificate of Compliance*" shall mean, as applicable, that duly executed certificate, substantially the same form as Exhibit B attached hereto to the extent such certificate shall be applicable, of the president, chief financial officer or chief executive officer of Customer, certifying as to the matters set forth in such certificate.

"*Closing Date*" shall mean the date upon which all conditions precedent to MLBFS' obligation to make the Loan shall have been met to the satisfaction of MLBFS.

"*Collateral*" shall mean all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Customer, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds), and the additional collateral described in Section 3.6 (b) hereof.

"*Commitment Expiration Date*" shall mean December 5, 2003.

"*Commitment Fee*" shall mean a fee of $33,750.00 due to MLBFS in connection with this Loan Agreement.

"*Credit Party*" and "*Credit Parties*" shall mean, individually or collectively, the Customer, all Guarantors, and all Pledgors.

"*Default*" shall mean either an "*Event of Default*" as defined in Section 3.5 hereof, or an event which with the giving of notice, passage of time, or both, would constitute such an Event of Default.

"*Default Rate*" shall mean an annual interest rate equal to the lesser of: (i) two percentage points over the Interest Rate; or (ii) the highest interest rate allowed by applicable law.

"*Event of Loss*" shall mean the occurrence whereby any tangible Collateral is damaged beyond repair, lost, totally destroyed or confiscated.

"*GAAP*" shall mean the generally accepted accounting principles in effect in the United States of America from time to time.

"*General Funding Conditions*" shall mean each of the following conditions to each loan or advance by MLBFS hereunder: (i) no Default or Event of Default shall have occurred and be continuing or would result from the making of any such loan or advance hereunder by MLBFS; (ii) there shall not have occurred and be continuing any material adverse change in the business or financial condition of any Credit Party; (iii) all representations and warranties of all of the Credit Parties herein or in any of the Loan Documents shall then be true and correct in all material respects; (iv) MLBFS shall have received this Loan Agreement and all of the other Loan Documents (including, without limitation, each of the Loan Documents described in the definition of "Real Property Funding Condition"), duly executed and filed or recorded where applicable, all of which shall be in form and substance satisfactory to MLBFS; (v) the Commitment Fee shall have been paid in full; (vi) MLBFS shall have received, as and to the extent applicable, copies of invoices, bills of sale, loan payoff letters and/or other evidence satisfactory to it that the proceeds of the Loan will satisfy the Loan Purpose; (vii) MLBFS shall have received evidence satisfactory to it as to the ownership of the Collateral and the perfection and priority of MLBFS' liens and security interests thereon, as well as the ownership

1

of and the perfection and priority of MLBFS' liens and security interests on any other collateral for the Obligations furnished pursuant to any of the Loan Documents; (viii) MLBFS shall have received evidence satisfactory to it of the insurance required hereby or by any of the Loan Documents; and (ix) any additional conditions specified in the *Term Loan Approval* letter executed by MLBFS with respect to the transactions contemplated hereby shall have been met to the satisfaction of MLBFS.

*"Guarantor"* shall mean each Person obligated under a guaranty, endorsement or other undertaking by which such Person guarantees or assumes responsibility in any capacity for the payment or performance of any of the Obligations.

*"Loan"* shall mean a one hundred nine-month term installment loan in an amount equal to $6,750,000.00.

*"Loan Agreement"* shall mean this agreement as titled in the initial paragraph hereof and shall specifically include that number to be designated by MLBFS as the Customer's "Loan No" in reference to this Loan Agreement, and which number and designation MLBFS shall provide to Customer upon the initial invoice generated by MLBFS.  At all times thereafter, such numerical loan number shall be included and be deemed to be a part of the title of this Loan Agreement.

*"Loan Documents"* shall mean this Loan Agreement, any indenture, any guaranty of any of the Obligations and all other security and other instruments, assignments, certificates, certifications and agreements of any kind relating to any of the Obligations, whether obtained, authorized, authenticated, executed, sent or received concurrently with or subsequent to this Loan Agreement, or which evidence the creation, guaranty or collateralization of any of the Obligations or the granting or perfection of liens or security interests upon any Collateral or any other collateral for the Obligations, including any modifications, amendments or restatements of the foregoing. The Loan Documents shall include any letter agreement regarding any post closing obligations of Customer or any Guarantor.

*"Loan Purpose"* shall mean the purpose for which the proceeds of the Loan will be used; to wit: To refinance Customer's existing WCMA Line of Credit No. 73B-07476 and Robert V. Matthews' WCMA Line of Credit No. 73B-07160 with MLBFS.

*"Location of Tangible Collateral"* shall mean the address of Customer set forth at the beginning of this Loan Agreement, together with any other address or addresses set forth on an exhibit hereto as being a Location of Tangible Collateral.

*"Net Proceeds"* shall mean, with respect to the sale of any real property or any equity offering, the total cash proceeds net of reasonable and customary sales costs (egs., title insurance, reasonable brokers' fees, survey costs, reasonable attorney's fees, transfer taxes and any state, federal and local income taxes due as a result of the sale) and the payment on any deed of trust, mortgage or other financing or reserves required thereon by such mortgage lender, if any, currently existing as of the date of this Agreement.

*"Obligations"* shall mean all liabilities, indebtedness and obligations of Customer or Stromberg LLC to MLBFS, howsoever created, arising or evidenced, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary or joint or several, and, without limiting the generality of the foregoing, shall include principal, accrued interest (including without limitation interest accruing after the filing of any petition in bankruptcy), all advances made by or on behalf of MLBFS under the Loan Documents, collection and other costs and expenses incurred by or on behalf of MLBFS, whether incurred before or after judgment, and all present and future liabilities, indebtedness and obligations of Customer under the Note and the Loan Documents and of Stromberg LLC under that certain Term Loan and Security Agreement dated of even date herewith.

*"Permitted Liens"* shall mean with respect to the Collateral: (i) liens for current taxes not yet due and payable, other non-consensual liens arising in the ordinary course of business for sums not due, and, if MLBFS' rights to and interest in the Collateral are not materially and adversely affected thereby, any such liens for taxes or other non-consensual liens arising in the ordinary course of business being contested in good faith by appropriate proceedings; (ii) liens in favor of MLBFS; (iii) liens which will be discharged with the proceeds of the Loan; and (iv) any other liens expressly permitted in writing by MLBFS including, without limitation, the lien of the real property taxes currently being protested with respect to Real Property 2.

*"Person"* shall mean any natural person and any corporation, partnership (general, limited or otherwise), limited liability company, trust, association, joint venture, governmental body or agency or other entity having legal status of any kind.

*"Pledgor"* shall mean each Person who at any time provides collateral, or otherwise now or hereinafter agrees to grants MLBFS a security interest in any assets as security for Customer's Obligations.

*"Real Property 1"* shall mean the parcels of real property and improvements thereon commonly known as 718 N. Colony Road, Wallingford, CT 06492.

*"Real Property 2"* shall mean the parcels of real property and improvements thereon commonly known as One Risdon Street, Naugatuck, CT 06770.

*"Real Property Funding Condition"* shall mean that Customer, at Customer's expense, shall have furnished or caused to be furnished to MLBFS all of the following, in form and substance reasonably satisfactory to MLBFS: (i) a second mortgage or deed of trust upon Real Property 2 and a third mortgage or deed of trust upon Real Property 1 in favor of MLBFS (including an assignment of rents and a security agreement granting to MLBFS a second security interest upon all fixtures now or hereafter located upon the Real Property 2 and a third security interest upon all fixtures now or hereafter located upon the Real Property 1); (ii) a policy or commitment for a policy of ALTA mortgagee's title insurance insuring MLBFS' lien upon the Real Property 1 and Real Property 2 for the full amount of the Loan, issued by Chicago Title Insurance Company, Lawyers Title Insurance Company or one of their agents, or another title company selected by MLBFS, with such special endorsements (including survey) as may reasonably be required by MLBFS and subject only to exceptions reasonably acceptable to MLBFS; (iii) flood certifications with respect to each of Real Property 1 and Real Property 2, (iv) surveys and appraisals satisfactory to MLBFS, (v) such exisitng environmental reports concerning each of Real Property 1 and Real Property 2 and MLBFS shall request, and (vi) such other agreements, documents and instruments in connection with the Real Property or MLBFS' lien thereon as MLBFS or the title insurance company may reasonably require.

2

"*UCC*" shall mean the Uniform Commercial Code of Illinois as in effect in Illinois from time to time.

**1.2 Other Terms.** Except as otherwise defined herein, all terms used in this Loan Agreement which are defined in the UCC shall have the meanings set forth in the UCC; and (iii) accounting terms not defined herein shall have the meaning ascribed to them in GAAP.

**1.3 UCC Filing.** Customer hereby authorizes MLBFS to file a record or records (as defined or otherwise specified under the UCC), including, without limitation, financing statements, in all jurisdictions and with all filing offices as MLBFS may determine, in its sole discretion, are necessary or advisable to perfect the security interest granted to MLBFS herein. Such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of collateral that describes such property in any other manner as MLBFS may determine, in its sole discretion, is necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted to the MLBFS herein.

**Article II. THE LOAN**

**2.1 Commitment.** Subject to the terms and conditions hereof, MLBFS hereby agrees to make the Loan to Customer for the Loan Purpose, and Customer agrees to borrow all amounts borrowed to satisfy the Loan Purpose from MLBFS. The entire proceeds of the Loan shall be disbursed on the Closing Date either directly to the applicable third party or parties on account of the Loan Purpose or to reimburse Customer for amounts directly expended by it; all as directed by Customer in a Closing Certificate to be executed by Customer and delivered to MLBFS prior to the Closing Date.

**2.2 Note.** The Loan will be evidenced by and repayable in accordance with that certain Collateral Installment Note made by Customer payable to the order of MLBFS and issued pursuant to this Loan Agreement (the "*Note*"). The Note is hereby incorporated as a part hereof as if fully set forth herein.

**2.3 Conditions of MLBFS' Obligation.** The Closing Date and MLBFS' obligation to make the Loan on the Closing Date are subject to the prior fulfillment of each of the following conditions: (a) MLBFS shall have received a written request from Customer that the Loan be funded in accordance with the terms hereof, together with a written direction from Customer as to the method of payment and payee(s) of the proceeds of the Loan, which request and direction shall have been received by MLBFS not less than two Business Days prior to any requested funding date; (b) MLBFS shall have received a copy of invoices, bills of sale, payoff letters or other applicable evidence reasonably satisfactory to it that the proceeds of the Loan will satisfy or fulfill the Loan Purpose; (c) the Commitment Expiration Date shall not then have occurred; and (d) each of the General Funding Conditions and the Real Property Funding Condition shall then have been met or satisfied to the reasonable satisfaction of MLBFS.

**2.4 Use of Loan Proceeds.** The proceeds of the Loan shall be used by Customer solely for a Loan Purpose, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. **Customer agrees that under no circumstances will the proceeds of the Loan be used: (a) for personal, family or household purposes of any person whatsoever, or (b) to purchase, carry or trade in securities, or repay debt incurred to purchase, carry or trade in securities, or (c) unless otherwise consented to in writing by MLBFS, to pay any amount to Merrill Lynch and Co., Inc. or any of its subsidiaries, other than Merrill Lynch Bank USA, Merrill Lynch Bank & Trust Co. or any subsidiary of either of them (including MLBFS and Merrill Lynch Credit Corporation).**

**2.5 Commitment Fee.** In consideration of the agreement by MLBFS to extend the Loan to Customer in accordance with and subject to the terms hereof, Customer has paid or shall, on or before the Closing Date pay, one half (1/2) of the Commitment Fee to MLBFS. Customer acknowledges and agrees that the remaining one half (1/2) of the Commitment Fee shall be due and payable upon the earlier of the maturity date of the Loan or the final payment thereof. Customer acknowledges and agrees that the Commitment Fee has been fully earned by MLBFS, and that it will not under any circumstances be refundable.

**Article III. GENERAL PROVISIONS**

**3.1 REPRESENTATIONS AND WARRANTIES**

Customer represents and warrants to MLBFS that:

(a) **Organization and Existence.** Customer is a limited liability company, duly organized and validly existing under the laws of the State of Connecticut; and, where applicable, each Business Guarantor is duly organized, validly existing and in good standing under the laws of the state of its formation and is qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary.

(b) **Execution, Delivery and Performance.** Each Credit Party has the requisite power and authority to enter into and perform the Loan Documents. The Customer holds all necessary permits, licenses, certificates of occupancy and other governmental authorizations and approvals required in order to own or operate the Customer's business. The execution, delivery and performance by Customer of this Loan Agreement and by each of the other Credit Parties of such of the other Loan Documents to which it is a party: (i) have been duly authorized by all requisite action, (ii) do not and will not violate or conflict with any law, order or other governmental requirement, or any of the agreements, instruments or documents which formed or govern any of the Credit Parties, and (iii) do not and will not breach or violate any of the provisions of, and will not result in a default by any of the Credit Parties under, any other agreement, instrument or document to which it is a party or is subject.

(c) **Notices and Approvals.** Except as may have been given or obtained, no notice to or consent or approval of any governmental body or authority or other third party whatsoever (including, without limitation, any other creditor) is required in connection with the execution, delivery or performance by any Credit Party of such of this Loan Agreement, the Note and the other Loan Documents to which it is a party.

3

(d) **Enforceability.** The Loan Documents to which any Credit Party is a party are the respective legal, valid and binding obligations of such Credit Party, enforceable against it or them, as the case may be, in accordance with their respective terms, except as enforceability may be limited by bankruptcy and other similar laws affecting the rights of creditors generally or by general principles of equity.

(e) **Collateral.** Except for priorities afforded to any Permitted Liens: (i) Customer has good and marketable title to the Collateral, (ii) none of the Collateral is subject to any lien, encumbrance or security interest, and (iii) upon the filing of all Uniform Commercial Code financing statements authenticated or otherwise authorized by Customer with respect to the Collateral in the appropriate jurisdiction(s) and/or the completion of any other action required by applicable law to perfect its liens and security interests, MLBFS will have valid and perfected first liens and security interests upon all of the Collateral.

(f) **Financial Statements.** Except as expressly set forth in Customer's or any Business Guarantor's financial statements, all financial statements of Customer and each Business Guarantor furnished to MLBFS have been prepared in conformity with generally accepted accounting principles, consistently applied, are true and correct in all material respects, and fairly present the financial condition of it as at such dates and the results of its operations for the periods then ended (subject, in the case of interim unaudited financial statements, to normal year-end adjustments); and since the most recent date covered by such financial statements, there has been no material adverse change in any such financial condition or operation. All financial statements furnished to MLBFS of any Guarantor other than a Business Guarantor are true and correct in all material respects and fairly represent such Guarantor's financial condition as of the date of such financial statements, and since the most recent date of such financial statements, there has been no material adverse change in such financial condition.

(g) **Litigation; Compliance With All Laws.** No litigation, arbitration, administrative or governmental proceedings are pending or, to the knowledge of Customer, threatened against any Credit Party, which would, if adversely determined, materially and adversely affect (i) such Credit Party's interest in the Collateral or the liens and security interests of MLBFS hereunder or under any of the Loan Documents, or (ii) the financial condition of such Credit Party or its continued operations. Each Credit Party is in compliance in all material respects with all laws, regulations, requirements and approvals applicable to such Credit Party.

(h) **Tax Returns.** All federal, state and local tax returns, reports and statements required to be filed by any Credit Party have been filed with the appropriate governmental agencies and all taxes due and payable by any Credit Party have been timely paid (except to the extent that any such failure to file or pay will not materially and adversely affect (i) either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, (ii) the financial condition of any Credit Party, or (iii) its continued operations).

(i) **Collateral Location.** All of the tangible Collateral is located at a Location of Tangible Collateral.

(j) **No Default.** No "Default" or "Event of Default" (each as defined in this Loan Agreement or any of the other Loan Documents) has occurred and is continuing.

(k) **No Outside Broker.** Except for employees of MLBFS, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") or one of their affiliates, Customer has not in connection with the transactions contemplated hereby directly or indirectly engaged or dealt with, and was not introduced or referred to MLBFS by, any broker or other loan arranger.

(l) Each of the foregoing representations and warranties: (i) has been and will be relied upon as an inducement to MLBFS to make the Loan, and (ii) is continuing and shall be deemed remade by Customer on the Closing Date.

## 3.2 FINANCIAL AND OTHER INFORMATION

(a) Customer shall furnish or cause to be furnished to MLBFS during the term of this Loan Agreement all of the following:

(i) **Tax Returns.** Not later than 15 days after the date filed with the Internal Revenue Service, a copy of each annual Federal Income Tax Return of Customer;

(i) **Personal Financial Statements.** Not later than 120 days after the close of each fiscal year of Customer, a current signed financial statement of each individual Guarantor;

(ii) **Paid Tax Bills.** A copy of each real estate tax bill on or issued in connection with the Real Property, together with evidence of payment of such tax bill; and

(iii) **Other Information.** Such other information as MLBFS may from time to time reasonably request relating to Customer, any Credit Party or the Collateral

(b) **General Agreements With Respect to Financial Information.** Customer agrees that except as otherwise specified herein or otherwise agreed to in writing by MLBFS: (i) all annual financial statements required to be furnished by Customer to MLBFS hereunder will be prepared by either the current independent accountants for Customer or other independent accountants reasonably acceptable to MLBFS, and (ii) all other financial information required to be furnished by Customer to MLBFS hereunder will be certified as correct in all material respects by the party who has prepared such information, and, in the case of internally prepared information with respect to Customer or any Business Guarantor, certified as correct by their respective chief financial officer.

## 3.3 OTHER COVENANTS

Customer further agrees during the term of this Loan Agreement that:

4

(a) **Financial Records; Inspection.** Each Credit Party (other than any Individual Guarantor) will: (i) maintain at its principal place of business complete and accurate books and records, and maintain all of its financial records in a manner consistent with the financial statements heretofore furnished to MLBFS, or prepared on such other basis as may be approved in writing by MLBFS; and (ii) permit MLBFS or its duly authorized representatives, upon reasonable notice and at reasonable times, to inspect its properties (both real and personal), operations, books and records.

(b) **Taxes.** Each Credit Party will pay when due all of its respective taxes, assessments and other governmental charges, howsoever designated, and all other liabilities and obligations, except to the extent that any such failure to file or pay will not materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, the financial condition of any Credit Party or its continued operations.

(c) **Compliance With Laws and Agreements.** No Credit Party will violate (i) any law, regulation or other governmental requirement, any judgment or order of any court or governmental agency or authority; (ii) any agreement, instrument or document which is material to its operations or to the operation or use of any Collateral, in each case as contemplated by the Loan Documents; or (iii) any agreement, instrument or document to which it is a party or by which it is bound, if any such violation will materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Loan Documents , the financial condition of any Credit Party, or its continued operations.

(d) **No Use of Merrill Lynch Name.** No Credit Party will directly or indirectly publish, disclose or otherwise use in any advertising or promotional material, or press release or interview, the name, logo or any trademark of MLBFS, MLPF&S, Merrill Lynch and Co., Incorporated or any of their affiliates.

(e) **Notification By Customer.** Customer shall provide MLBFS with prompt written notification of: (i) any Default; (ii) any material adverse change in the business, financial condition or operations of any Credit Party; (iii) any information which indicates that any financial statements of any Credit Party fail in any material respect to present fairly the financial condition and results of operations purported to be presented in such statements; (iv) any threatened or pending litigation involving any Credit Party; (v) any casualty loss, attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000 or more of any Collateral; and (vi) any change in Customer's outside accountants. Each notification by Customer pursuant hereto shall specify the event or information causing such notification, and, to the extent applicable, shall specify the steps being taken to rectify or remedy such event or information.

(f) **Entity Organization.** Each Credit Party which is an entity will (i) remain (A) validly existing and in good standing in the state of its organization and (B) qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary, and (ii) maintain all governmental permits, licenses and authorizations. Customer shall give MLBFS not less than 30 days prior written notice of any change in name (including any fictitious name) or chief executive office, place of business, or as applicable, the principal residence.

(g) **Merger, Change in Business.** Except upon the prior written consent of MLBFS, Customer shall not cause or permit any Credit Party to: (i) be a party to any merger or consolidation with, or purchase or otherwise acquire all or substantially all of the assets of, or any material stock, partnership, joint venture or other equity interest in, any Person, or sell, transfer or lease all or any substantial part of its assets; (ii) engage in any material business substantially different from its business in effect as of the date of application by Customer for credit from MLBFS, or cease operating any such material business; or (iii) cause or permit any other Person to assume or succeed to any material business or operations of such Credit Party.

(h) **Collateral Assignment Of Life Insurance.** Customer shall acquire and maintain in effect so long as there are any Obligations, a policy or policies of life insurance on the life of Robert V. Matthews in form and amount and with insurers satisfactory to MLBFS, providing that MLBFS shall be a beneficiary of not less than $1,000,000.00 of the proceeds of such policy or policies. Customer shall provide or cause to be provided to MLBFS a certified copy or certificate of each such policy and each renewal thereof. To the extent the proceeds of any such policy or policies provided to MLBFS as beneficiary exceed the Obligations, MLBFS will return such excess to the insurer.

(i) **Net Proceeds From Sale Of Real Estate Sales.** One Hundred Percent of the Net Proceeds from real estate sales for the real property commonly known as: (A) One and Three Long Wharf Drive, (B) Real Property 1, (C) Real Property 2, (D) 34 acre Parcel, Washington Depot, CT, and (E) 158 South Ocean Blvd., Palm Beach, FL, shall be applied as a permanent reduction to the Term Loan. The payment shall be applied in the inverse order of maturity.

## 3.4 COLLATERAL

(a) **Pledge of Collateral.** To secure payment and performance of the Obligations, Customer hereby pledges, assigns, transfers and sets over to MLBFS, and grants to MLBFS first liens and security interests in and upon all of the Collateral, subject only to priorities afforded to Permitted Liens.

(b) **Liens.** Except upon the prior written consent of MLBFS, Customer shall not create or permit to exist any lien, encumbrance or security interest upon or with respect to any Collateral now owned or hereafter acquired other than Permitted Liens.

(c) **Performance of Obligations.** Customer shall perform all of its obligations owing on account of or with respect to the Collateral; it being understood that nothing herein, and no action or inaction by MLBFS, under this Loan Agreement or otherwise, shall be deemed an assumption by MLBFS of any of Customer's said obligations.

(d) **Sales and Collections.** Customer shall not sell, transfer or otherwise dispose of any Collateral, except that so long as no Event of Default shall have occurred and be continuing, Customer may in the ordinary course of its business: (i) sell any Inventory normally held by Customer for sale, (ii) use or consume any materials and supplies normally held by Customer for use or consumption, and (iii) collect all of its Accounts.

(e) **Account Schedules.** Upon the request of MLBFS, which may be made from time to time, Customer shall deliver to MLBFS, in addition to the other information required hereunder, a schedule identifying, for each Account and all Chattel Paper subject to MLBFS' security interests hereunder, each account debtor by name and address and amount, invoice or contract number and date of each invoice or contract. Customer shall furnish to MLBFS such additional information with respect to the Collateral, and amounts received by Customer as proceeds of any of the Collateral, as MLBFS may from time to time reasonably request.

(f) **Alterations and Maintenance.** Except upon the prior written consent of MLBFS, Customer shall not make or permit any material alterations to any tangible Collateral which might materially reduce or impair its market value or utility. Customer shall at all times (i) keep the tangible Collateral in good condition and repair, reasonable wear and tear excepted, (ii) protect the Collateral against loss, damage or destruction and (iii) pay or cause to be paid all obligations arising from the repair and maintenance of such Collateral, as well as all obligations with respect to any Location of Tangible Collateral (e.g., all obligations under any lease, mortgage or bailment agreement), except for any such obligations being contested by Customer in good faith by appropriate proceedings.

(g) **Location.** Except for movements required in the ordinary course of Customer's business, Customer shall give MLBFS 30 days' prior written notice of the placing at or movement of any tangible Collateral to any location other than a Location of Tangible Collateral. In no event shall Customer cause or permit any material tangible Collateral to be removed from the United States without the express prior written consent of MLBFS. Customer will keep its books and records at its principal office address specified in the first paragraph of this Loan Agreement. Customer will not change the address where books and records are kept, or change its name or taxpayer identification number. Customer will place a legend acceptable to MLBFS on all Chattel Paper that is Collateral in the possession or control of Customer from time to time indicating that MLBFS has a security interest therein.

(h) **Insurance.** Customer shall insure all of the tangible Collateral under a policy or policies of physical damage insurance for the full replacement value thereof against such perils as MLBFS shall reasonably require and also providing that losses will be payable to MLBFS as its interests may appear pursuant to a lender's or mortgagee's long form loss payable endorsement and containing such other provisions as may be reasonably required by MLBFS. Customer shall further provide and maintain a policy or policies of commercial general liability liability insurance naming MLBFS as an additional party insured. Customer and each Business Guarantor shall maintain such other insurance as may be required by law or is customarily maintained by companies in a similar business or otherwise reasonably required by MLBFS. All such insurance policies shall provide that MLBFS will receive not less than 10 days prior written notice of any cancellation, and shall otherwise be in form and amount and with an insurer or insurers reasonably acceptable to MLBFS. Customer shall furnish MLBFS with a copy or certificate of each such policy or policies and, prior to any expiration or cancellation, each renewal or replacement thereof.

(i) **Event of Loss.** Customer shall at its expense promptly repair all repairable damage to any tangible Collateral. In the event that there is an Event of Loss and the affected Collateral had a value prior to such Event of Loss of $25,000.00 or more, then, on or before the first to occur of (i) 90 days after the occurrence of such Event of Loss, or (ii) 10 Business Days after the date on which either Customer or MLBFS shall receive any proceeds of insurance on account of such Event of Loss, or any underwriter of insurance on such Collateral shall advise either Customer or MLBFS that it disclaims liability in respect of such Event of Loss, Customer shall, at Customer's option, either replace the Collateral subject to such Event of Loss with comparable Collateral free of all liens other than Permitted Liens (in which event Customer shall be entitled to utilize the proceeds of insurance on account of such Event of Loss for such purpose, and may retain any excess proceeds of such insurance), or permanently prepay the Obligations by an amount equal to the actual cash value of such Collateral as determined by either the insurance company's payment (plus any applicable deductible) or, in absence of insurance company payment, as reasonably determined by MLBFS; it being further understood that any such permanent prepayment shall cause an immediate permanent reduction in the Loan in the amount of such prepayment and shall not reduce the amount of any future reductions in the Loan that may be required hereunder. Notwithstanding the foregoing, if at the time of occurrence of such Event of Loss or any time thereafter prior to replacement or line reduction, as aforesaid, an Event of Default shall have occurred and be continuing hereunder, then MLBFS may at its sole option, exercisable at any time while such Event of Default shall be continuing, require Customer to either replace such Collateral or prepay the Obligations, as aforesaid.

(j) **Notice of Certain Events.** Customer shall give MLBFS immediate notice of any attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000.00 or more of the Collateral.

(k) **Indemnification.** Customer shall indemnify, defend and save MLBFS harmless from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) of any nature whatsoever which may be asserted against or incurred by MLBFS arising out of or in any manner occasioned by (i) the ownership, collection, possession, use or operation of any Collateral, or (ii) any failure by Customer to perform any of its obligations hereunder; excluding, however, from said indemnity any such claims, liabilities, etc. arising directly out of the wilful wrongful act or active gross negligence of MLBFS. This indemnity shall survive the expiration or termination of this Loan Agreement as to all matters arising or accruing prior to such expiration or termination.

## 3.5 EVENTS OF DEFAULT

The occurrence of any of the following events shall constitute an *"Event of Default"* under this Loan Agreement:

(a) **Failure to Pay.** Customer shall fail to pay when due any amount owing by Customer to MLBFS under the Note or this Loan Agreement, or shall fail to pay when due any other Obligations, and any such failure shall continue for more than five (5) Business Days after such due date.

(b) **Failure to Perform.** Any Credit Party shall default in the performance or observance of any covenant or agreement on its part to be performed or observed under this Loan Agreement, the Note or any of the other Loan Documents (not constituting an Event of Default under any other clause of this Section), and such default shall continue unremedied for ten (10) Business Days (i) after written notice thereof shall have been given by MLBFS to Customer, or (ii) from Customer's receipt of any notice or knowledge of such default from any other source.

(c) **Breach of Warranty.** Any representation or warranty made by any Credit Party contained in this Loan Agreement, the Note or any of the other Loan Documents shall at any time prove to have been incorrect in any material respect when made.

(d) **Default Under Other ML Agreement.** A default or event of default by any Credit Party shall occur under the terms of any other agreement, instrument or document (including, without limitation, any agreements with Stromberg LLC or Robert V. Matthews) with or intended for the benefit of MLBFS, MLPF&S or any of their affiliates, and any required notice shall have been given and required passage of time shall have elapsed.

6

(e)   **Bankruptcy Event.** Any Bankruptcy Event shall occur.

(f)   **Material Impairment.** Any event shall occur which shall reasonably cause MLBFS to in good faith believe that the prospect of full payment or performance by the Credit Parties of any of their respective liabilities or obligations under this Loan Agreement, the Note or any of the other Loan Documents or such Guarantor is a party has been materially impaired. The existence of such a material impairment shall be determined in a manner consistent with the intent of Section 1-208 of the UCC.

(g)   **Default Under Other Agreements.** Any event shall occur which results in any default of any material agreement involving any Credit Party or any agreement evidencing any indebtedness of any Credit Party of $100,000.00 or more.

(h)   **Collateral Impairment.** The loss, theft or destruction of any Collateral, the occurrence of any material deterioration or impairment of any Collateral or any material decline or depreciation in the value or market price thereof (whether actual or reasonably anticipated), which causes any Collateral, in the sole opinion of MLBFS, to become unsatisfactory as to value or character, or any levy, attachment, seizure or confiscation of the Collateral which is not released within ten (10) Business Days.

(i)   **Contested Obligation.** (i) Any of the Loan Documents shall for any reason cease to be, or are asserted by any Credit Party not to be a legal, valid and binding obligations of any Credit Party, enforceable in accordance with their terms; or (ii) the validity, perfection or priority of MLBFS' first lien and security interest on any of the Collateral is contested by any Person; or (iii) any Credit Party shall or shall attempt to repudiate, revoke, contest or dispute, in whole or in part, such Credit Party's obligations under any Loan Document.

(j)   **Judgments.** A judgment shall be entered against any Credit Party in excess of $25,000 and the judgment is not paid in full and discharged, or stayed and bonded to the satisfaction of MLBFS.

(k)   **Change in Control/Change in Management.** (i) Any direct or indirect sale, conveyance, assignment or other transfer of or grant of a security interest in any ownership interest of any Credit Party which results, or if any rights related thereto were exercised would result, in any change in the identity of the individuals or entities previously in control of any Credit Party; or (ii) the owner(s) of the controlling equity interest of any Credit Party on the date hereof shall cease to own and control such Credit Party; or (iii) the Person (or a replacement who is satisfactory to MLBFS in its sole discretion) who is the chief executive officer or holds such similar position, or any senior manager of such Credit Party on the date hereof shall for any reason cease to be the chief executive officer or senior manager of the Customer.

(l)   **Withdrawal, Death, etc.** The incapacity, death, withdrawal, dissolution, or the filing for dissolution of: (i) any Credit Party; or (ii) any controlling shareholder, partner, or member of any Credit Party.

**3.6 REMEDIES**

(a) **Remedies Upon Default.** Upon the occurrence and during the continuance of any Event of Default, MLBFS may at its sole option do any one or more or all of the following, at such time and in such order as MLBFS may in its sole discretion choose:

(i) **Termination.** MLBFS may without notice terminate its obligation to extend any credit to or for the benefit of Customer (it being understood, however, that upon the occurrence of any Bankruptcy Event all such obligations shall automatically terminate without any action on the part of MLBFS).

(ii) **Acceleration.** MLBFS may declare the principal of and interest and any premium on the Note, and all other Obligations to be forthwith due and payable, whereupon all such amounts shall be immediately due and payable, without presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate or other notice or formality of any kind, all of which are hereby expressly waived; provided, however, that upon the occurrence of any Bankruptcy Event all such principal, interest, premium and other Obligations shall automatically become due and payable without any action on the part of MLBFS.

(iii) **Exercise Other Rights.** MLBFS may exercise any or all of the remedies of a secured party under applicable law and in equity, including, but not limited to, the UCC, and any or all of its other rights and remedies under the Loan Documents.

(iv) **Possession.** MLBFS may require Customer to make the Collateral and the records pertaining to the Collateral available to MLBFS at a place designated by MLBFS which is reasonably convenient to Customer, or may take possession of the Collateral and the records pertaining to the Collateral without the use of any judicial process and without any prior notice to Customer.

(v) **Sale.** MLBFS may sell any or all of the Collateral at public or private sale upon such terms and conditions as MLBFS may reasonably deem proper, whether for cash, on credit, or for future delivery, in bulk or in lots. MLBFS may purchase any Collateral at any such sale free of Customer's right of redemption, if any, which Customer expressly waives to the extent not prohibited by applicable law. The net proceeds of any such public or private sale and all other amounts actually collected or received by MLBFS pursuant hereto, after deducting all costs and expenses incurred at any time in the collection of the Obligations and in the protection, collection and sale of the Collateral, will be applied to the payment of the Obligations, with any remaining proceeds paid to Customer or whoever else may be entitled thereto, and with Customer and each Guarantor remaining jointly and severally liable for any amount remaining unpaid after such application.

(vi) **Delivery of Cash, Checks, Etc.** MLBFS may require Customer to forthwith upon receipt, transmit and deliver to MLBFS in the form received, all cash, checks, drafts and other instruments for the payment of money (properly endorsed, where required, so that such items may be collected by MLBFS) which may be received by Customer at any time in full or partial payment of any Collateral, and require that Customer not commingle any such items which may be

so received by Customer with any other of its funds or property but instead hold them separate and apart and in trust for MLBFS until delivery is made to MLBFS.

(vii) **Notification of Account Debtors.** MLBFS may notify any account debtor that its Account or Chattel Paper has been assigned to MLBFS and direct such account debtor to make payment directly to MLBFS of all amounts due or becoming due with respect to such Account or Chattel Paper; and MLBFS may enforce payment and collect, by legal proceedings or otherwise, such Account or Chattel Paper.

(viii) **Control of Collateral.** MLBFS may otherwise take control in any lawful manner of any cash or non-cash items of payment or proceeds of Collateral and of any rejected, returned, stopped in transit or repossessed goods included in the Collateral and endorse Customer's name on any item of payment on or proceeds of the Collateral.

(b) **Set-Off.** MLBFS shall have the further right upon the occurrence and during the continuance of an Event of Default to set-off, appropriate and apply toward payment of any of the Obligations, in such order of application as MLBFS may from time to time and at any time elect, any cash, credit, deposits, accounts, financial assets, investment property, securities and any other property of Customer which is in transit to or in the possession, custody or control of MLBFS, MLPF&S or any agent, bailee, or affiliate of MLBFS or MLPF&S. Customer hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as Collateral and as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the UCC.

(c) **Power of Attorney.** Effective upon the occurrence and during the continuance of an Event of Default, Customer hereby irrevocably appoints MLBFS as its attorney-in-fact, with full power of substitution, in its place and stead and in its name or in the name of MLBFS, to from time to time in MLBFS' sole discretion take any action and to execute any instrument which MLBFS may deem necessary or advisable to accomplish the purposes of this Loan Agreement and the other Loan Documents, including, but not limited to, to receive, endorse and collect all checks, drafts and other instruments for the payment of money made payable to Customer included in the Collateral. The powers of attorney granted to MLBFS in this Loan Agreement are coupled with an interest and are irrevocable until the Obligations have been indefeasibly paid in full and fully satisfied and all obligations of MLBFS under this Loan Agreement have been terminated.

(d) **Remedies are Severable and Cumulative.** All rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights and remedies available in the Note, the other Loan Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively.

(e) **No Marshalling.** MLBFS shall be under no duty or obligation to (i) preserve, protect or marshall the Collateral; (ii) preserve or protect the rights of any Credit Party or any other Person claiming an interest in the Collateral; (iii) realize upon the Collateral in any particular order or manner, (iv) seek repayment of any Obligations from any particular source; (v) proceed or not proceed against any Credit Party pursuant to any guaranty or security agreement or against any Credit Party under the Loan Documents, with or without also realizing on the Collateral; (vi) permit any substitution or exchange of all or any part of the Collateral; or (vii) release any part of the Collateral from the Loan Agreement or any of the other Loan Documents, whether or not such substitution or release would leave MLBFS adequately secured.

(f) **Notices.** To the fullest extent permitted by applicable law, Customer hereby irrevocably waives and releases MLBFS of and from any and all liabilities and penalties for failure of MLBFS to comply with any statutory or other requirement imposed upon MLBFS relating to notices of sale, holding of sale or reporting of any sale, and Customer waives all rights of redemption or reinstatement from any such sale. Any notices required under applicable law shall be reasonably and properly given to Customer if given by any of the methods provided herein at least 5 Business Days prior to taking action. MLBFS shall have the right to postpone or adjourn any sale or other disposition of Collateral at any time without giving notice of any such postponed or adjourned date. In the event MLBFS seeks to take possession of any or all of the Collateral by court process, Customer further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession, and any demand for possession prior to the commencement of any suit or action.

## 3.7 MISCELLANEOUS

(a) **Non-Waiver.** No failure or delay on the part of MLBFS in exercising any right, power or remedy pursuant to this Loan Agreement, the Note or any of the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any such right, power or remedy shall preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. Neither any waiver of any provision of this Loan Agreement, the Note nor any of the other Loan Documents, nor any consent to any departure by Customer therefrom, shall be effective unless the same shall be in writing and signed by MLBFS. Any waiver of any provision of this Loan Agreement, the Note or any of the other Loan Documents and any consent to any departure by Customer from the terms of this Loan Agreement, the Note or any of the other Loan Documents shall be effective only in the specific instance and for the specific purpose for which given. Except as otherwise expressly provided herein, no notice to or demand on Customer shall in any case entitle Customer to any other or further notice or demand in similar or other circumstances.

(b) **Disclosure.** Customer hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other, and to any third party in connection with Section 3.7 (h) herein, any and all financial and other information about Customer. Customer further irrevocably authorizes MLBFS to contact, investigate, inquire and obtain consumer reports, references and other information on Customer from consumer reporting agencies and other credit reporting services, former or current creditors, and other persons and sources (including, without limitation, any Affiliate of MLBFS) and to provide to any references, consumer reporting agencies, credit reporting services, creditors and other persons and sources (including, without limitation, Affiliates of MLBFS) all financial, credit and other information obtained by MLBFS relating to the Customer.

(c) **Communications.** Delivery of an agreement, instrument or other document may, at the discretion of MLBFS, be by electronic transmission. Except as required by law or otherwise provided herein or in a writing executed by the party to be bound, all notices demands, requests, accountings, listings, statements, advices or other communications to be given under the Loan Documents shall be in writing, and shall be served either personally, by deposit with a reputable overnight courier with charges prepaid, or by deposit in the United States mail by certified mail return receipt required. Notices may be addressed to Customer as set forth at its address shown in the preamble hereto, or to any office to which billing or account statements are sent; to MLBFS at its address shown in the preamble hereto, or at such other address designated in writing by MLBFS. Any such communication shall be deemed to have been given upon, in the case of personal delivery the date of delivery, one Business Day after deposit with an overnight courier, two (2) Business Days after deposit in the United States by certified mail (return receipt required), or receipt of electronic transmission (which shall be presumed to be three hours after the time of transmission unless an error message is received by the sender), except that any notice of change of address shall not be effective until actually received.

(d) **Fees, Expenses and Taxes.** Customer shall upon demand pay or reimburse MLBFS for: (i) all UCC, real property or other filing, recording and search fees and expenses incurred by MLBFS in connection with the verification, perfection or preservation of MLBFS' rights hereunder or in any Collateral or any other collateral for the Obligations; (ii) any and all stamp, transfer, mortgage, intangible, document, filing, recording and other taxes and fees payable or determined to be payable in connection with the borrowings hereunder or the execution, delivery, filing and/or recording of the Loan Documents and any other instruments or documents provided for herein or delivered or to be delivered hereunder or in connection herewith; (iii) any and all fees and out-of-pocket expenses to third parties incurred by MLBFS in connection with the title insurance, environmental audit, appraisal, survey and other instruments or documents referred to in the definition of Real Property Funding Condition; and (iv) all fees and out-of-pocket expenses (including attorneys' fees and legal expenses) incurred by MLBFS in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment of this Loan Agreement, or under any of the other Loan Documents and such other instruments or documents, and the rights and remedies of MLBFS thereunder and all other matters in connection therewith. The obligations of Customer under this paragraph shall survive the expiration or termination of this Loan Agreement and the discharge of the other Obligations.

(e) **Right to Perform Obligations.** If Customer shall fail to do any act or thing which it has covenanted to do under this Loan Agreement or any of the Loan Documents, or any representation or warranty on the part of Customer contained in this Loan Agreement or any of the Loan Documents shall be breached, MLBFS may, in its sole discretion, after 5 Business Days written notice is sent to Customer (or such lesser notice, including no notice, as is reasonable under the circumstances), do the same or cause it to be done or remedy any such breach, and may expend its funds for such purpose. Any and all reasonable amounts so expended by MLBFS shall be repayable to MLBFS by Customer upon demand, with interest at the "Interest Rate" (as that item is defined in the Note) during the period from and including the date funds are so expended by MLBFS to the date of repayment, and all such amounts shall be additional Obligations. The payment or performance by MLBFS of any of Customer's obligations hereunder shall not relieve Customer of said obligations or of the consequences of having failed to pay or perform the same, and shall not waive or be deemed a cure of any Default.

(f) **Late Charge.** Any payment required to be made by Customer pursuant to this Loan Agreement or any of the Loan Documents not paid within ten (10) days of the applicable due date shall be subject to a late charge in an amount equal to the lesser of: (i) 5% of the overdue amount, or (ii) the maximum amount permitted by applicable law. Such late charge shall be payable on demand.

(g) **Further Assurances.** Customer agrees to do such further acts and things and to execute and deliver to MLBFS such additional agreements, instruments and documents as MLBFS may reasonably require or deem advisable to effectuate the purposes of this Loan Agreement, the Note or any of the other Loan Documents, or to establish, perfect and maintain MLBFS' security interests and liens upon the Collateral, including, but not limited to: (i) executing financing statements or amendments thereto when and as reasonably requested by MLBFS; and (ii) if in the reasonable judgment of MLBFS it is required by local law, causing the owners and/or mortgagees of the real property on which any Collateral may be located to execute and deliver to MLBFS waivers or subordinations reasonably satisfactory to MLBFS with respect to any rights in such Collateral.

(h) **Binding Effect.** This Loan Agreement, the Note and the other Loan Documents shall be binding upon, and shall inure to the benefit of MLBFS, Customer and their respective successors and assigns. MLBFS reserves the right, at any time while the Obligations remain outstanding, to sell, assign, syndicate or otherwise transfer or dispose of any or all of MLBFS' rights and interests under the Loan Documents. MLBFS also reserves the right at any time to pool the Loan with one or more other loans originated by MLBFS or any other Person, and to securitize or offer interests in such pool on whatever terms and conditions MLBFS shall determine. Customer consents to MLBFS releasing financial and other information regarding Credit Parties, the Collateral and the Loan in connection with any such sale, pooling, securitization or other offering. Customer shall not assign any of its rights or delegate any of its obligations under this Loan Agreement, the Note or any of the other Loan Documents without the prior written consent of MLBFS. Unless otherwise expressly agreed to in a writing signed by MLBFS, no such consent shall in any event relieve Customer of any of its obligations under this Loan Agreement, the Note or any of the other Loan Documents.

(i) **Interpretation; Construction.** (i) Captions and section and paragraph headings in this Loan Agreement are inserted only as a matter of convenience, and shall not affect the interpretation hereof; (ii) no provision of this Loan Agreement shall be construed against a particular Person or in favor of another Person merely because of which Person (or its representative) drafted or supplied the wording for such provision; and (iii) where the context requires: (a) use of the singular or plural incorporates the other, and (b) pronouns and modifiers in the masculine, feminine or neuter gender shall be deemed to refer to or include the other genders.

(j) **Governing Law.** This Loan Agreement, the Note and, unless otherwise expressly provided therein, each of the other Loan Documents, shall be governed in all respects by the laws of the State of Illinois, not including its conflict of law provisions.

(k) **Severability of Provisions.** Whenever possible, each provision of this Loan Agreement, the Note and the other Loan Documents shall be interpreted in such manner as to be effective and valid under applicable law. Any provision of this Loan Agreement, the Note or any of the other Loan Documents which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without

invalidating the remaining provisions of this Loan Agreement, the Note and the other Loan Documents or affecting the validity or enforceability of such provision in any other jurisdiction.

(l)  **Term.** This Loan Agreement shall become effective when accepted by MLBFS at its office in Chicago, Illinois, and subject to the terms hereof, shall continue in effect so long thereafter as there shall be any moneys owing hereunder or under the Note, or there shall be any other Obligations outstanding. Customer hereby waives notice of acceptance of this Loan Agreement by MLBFS.

(m)  **Exhibits.** The exhibits to this Loan Agreement are hereby incorporated and made a part hereof and are an integral part of this Loan Agreement.

(n)  **Counterparts.** This Loan Agreement may be executed in one or more counterparts which, when taken together, constitute one and the same agreement.

(o)  **Jurisdiction; Waiver.** Customer acknowledges that this Loan Agreement is being accepted by MLBFS in partial consideration of MLBFS' right and option, in its sole discretion, to enforce the Loan Documents in either the State of Illinois or in any other jurisdiction where Customer or any Collateral may be located. Customer irrevocably submits itself to jurisdiction in the State of Illinois and venue in any state or federal court in the County of Cook for such purposes, and Customer waives any and all rights to contest said jurisdiction and venue and the convenience of any such forum, and any and all rights to remove such action from state to federal court. Customer further waives any rights to commence any action against MLBFS in any jurisdiction except in the County of Cook and State of Illinois. Customer agrees that all such service of process shall be made by mail or messenger directed to it in the same manner as provided for notices to Customer in this Loan Agreement and that service so made shall be deemed to be completed upon the earlier of actual receipt or three (3) days after the same shall have been posted to Customer or Customer's agent. Nothing contained herein shall affect the right of MLBFS to serve legal process in any other manner permitted by law or affect the right of MLBFS to bring any action or proceeding against Customer or its property in the courts of any other jurisdiction. Customer waives, to the extent permitted by law, any bond or surety or security upon such bond which might, but for this waiver, be required of MLBFS. Customer further waives the right to bring any non-compulsory counterclaims.

(p)  **Jury Waiver.** MLBFS and Customer hereby each expressly waive any and all rights to a trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other party with respect to any matter relating to, arising out of or in any way connected with the Loan, the Obligations, this Loan Agreement, any of the other Loan Documents and/or any of the transactions which are the subject matter of this Loan Agreement.

(q)  **Integration.** This Loan Agreement, together with the other Loan Documents, constitutes the entire understanding and represents the full and final agreement between the parties with respect to the subject matter hereof, and may not be contradicted by evidence of prior written agreements or prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements of the parties. Without limiting the foregoing, Customer acknowledges that: (i) no promise or commitment has been made to it by MLBFS, MLPF&S or any of their respective employees, agents or representatives to make any Loan on any terms other than as expressly set forth herein, or to make any other loan or otherwise extend any other credit to Customer or any other party; and (ii) except as otherwise expressly provided herein, this Loan Agreement supersedes and replaces any and all proposals, letters of intent and approval and commitment letters from MLBFS to Customer, none of which shall be considered a Loan Document. No amendment or modification of any of the Loan Documents to which Customer is a party shall be effective unless in a writing signed by both MLBFS and Customer.

(r)  **Survival.** All representations, warranties, agreements and covenants contained in the Loan Documents shall survive the signing and delivery of the Loan Documents, and all of the waivers made and indemnification obligations undertaken by Customer shall survive the termination, discharge or cancellation of the Loan Documents.

(s)  **Customer's Acknowledgments.** The Customer acknowledges that the Customer: (i) has had ample opportunity to consult with counsel and such other parties as deemed advisable prior to signing and delivering this Loan Agreement and the other Loan Documents; (ii) understands the provisions of this Loan Agreement and the other Loan Documents, including all waivers contained therein; and (iii) signs and delivers this Loan Agreement and the other Loan Documents freely and voluntarily, without duress or coercion.

(t)  **Release.** In consideration of the MLBFS' agreement to make the Loan, the Customer, for itself and its members and its attorneys, agents, heirs, predecessors, successors and assigns (the *"Releasing Parties"*) does hereby remise, release and forever discharge MLBFS, its affiliated corporations (including, without limitation, Merrill Lynch and Co., Incorporated and MLPF&S) and their attorneys, agents, heirs, predecessors, successors and assigns (the *"Released Parties"*) of and from any claims and any and all manner of action or actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity and in contract or tort or statute, or otherwise, which any of the Releasing Parties has had, now has or which it hereafter can, shall or may have against any of the Released Parties for or by reason of any matter, cause or thing arising prior to the execution of this Agreement and related in any way to all prior relationships and dealings among the Releasing Parties and the Released Parties, including, without limitation, under (a) this Agreement, (b) the Loan Documents, (c) the Loan Agreements referred to in the Loan Purpose, and (d) the security documents related thereto or the administration of the loans and financial accommodations thereunder.

**This Loan Agreement and the other Loan Documents are executed under seal and are intended to take effect as sealed instruments.**

**IN WITNESS WHEREOF**, this Loan Agreement has been executed as of the day and year first above written.

**MATTHEWS VENTURES HOLDINGS LLC**

By: _____
Robert V. Matthews, as Manager

Accepted at Chicago, Illinois:
**MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.**

By: _____

11

**EXHIBIT A**

ATTACHED TO AND HEREBY MADE A PART OF TERM LOAN AND SECURITY AGREEMENT DATED AS OF DECEMBER 5, 2003 BETWEEN MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. AND MATTHEWS VENTURES HOLDINGS LLC

**Additional Locations of Tangible Collateral:**

NONE.

MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS

# EXHIBIT B



$6,750,000.00                                                                                                  December ___, 2003

## COLLATERAL INSTALLMENT NOTE

**FOR VALUE RECEIVED, MATTHEWS VENTURES HOLDINGS LLC**, a limited liability company organized and existing under the laws of the State of Connecticut ("*Customer*") hereby promises to pay to the order of **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.**, a corporation organized and existing under the laws of the State of Delaware ("*MLBFS*"), in lawful money of the United States, the principal sum of Six Million Seven Hundred Fifty Thousand And 00/100 Dollars ($6,750,000.00), or if more or less, the aggregate amount advanced by MLBFS to Customer pursuant to the Loan Agreement (the "Loan Amount"); together with interest on the unpaid balance of the Loan Amount, from the Closing Date until payment, at the Interest Rate, as follows:

### 1. DEFINITIONS.

(a) In addition to terms defined elsewhere in this Note, as used herein, the following terms shall have the following meanings:

(i) "*Closing Date*" shall mean the date of advancement of funds hereunder.

(ii) "*Excess Interest*" shall mean any amount or rate of interest (including the Default Rate and, to the extent that they may be deemed to constitute interest, any prepayment fees, late charges and other fees and charges) payable, charged or received in connection with any of the Loan Documents which exceeds the maximum amount or rate of interest permitted under applicable law.

(iii) "*Interest Rate*" shall mean a variable per annum rate equal to the sum of (i) 1.00% per annum, and (ii) the rate from time to time published in the "Money Rates" section of *The Wall Street Journal* as being the "*Prime Rate*" (or, if more than one rate is published as the Prime Rate, then the highest of such rates). Notwithstanding anything to the contrary, if more than one rate is so published, then the interest rate shall be the highest of such published rates. The Interest Rate will change as of the date of publication in *The Wall Street Journal* of a Prime Rate that is different from that published on the preceding Business Day. In the event that *The Wall Street Journal* shall, for any reason, fail or cease to publish the Prime Rate, MLBFS will choose a reasonably comparable index or source to use as the basis for the Interest Rate.

(iv) "*Loan Agreement*" shall mean that certain **TERM LOAN AND SECURITY AGREEMENT** dated as of the date hereof between Customer and MLBFS, as the same may have been or may hereafter be amended or supplemented.

(v) "*Note*" shall mean this **COLLATERAL INSTALLMENT NOTE**.

(b) Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Agreement. Without limiting the foregoing, the terms "*Loan Documents*", "*Bankruptcy Event*" and "*Event of Default*" shall have the respective meanings set forth in the Loan Agreement.

### 2. PAYMENT AND OTHER TERMS. Customer shall pay the indebtedness under this Note in 109 consecutive monthly installments commencing on the first day of the second calendar month following the Closing Date and continuing on the first day of each calendar month thereafter until this Note shall be paid in full. The first 108 such installments shall each be in an amount equal to the sum of (i) accrued interest, and (ii) 1/270th of the Loan (plus, with the first such installment, an additional amount equal to interest accrued from the date of funding to the last day of the calendar month in which funding occurs), and the 109th installment shall be a balloon in an amount equal to the sum of all accrued interest hereunder, the then unpaid principal balance hereof and all other sums then payable hereunder.

Each payment received hereunder shall be applied *first* to any fees and expenses of MLBFS payable by Customer under the terms of the Loan Agreement (including, without limitation, late charges), *next* to accrued interest at the Interest Rate, *with the balance* applied on account of the unpaid principal hereof, or in such other manner as the holder hereof may hereinafter determine from time to time for the allocation of such payments thereof. Any part of the principal hereof or interest hereon or other sums payable hereunder or under the Loan Agreement not paid within ten (10) days of the applicable due date shall be subject to a late charge equal to the lesser of (i) 5% of the overdue amount, or (ii) the maximum amount permitted by law. All interest shall accrue daily on the outstanding balance and be computed on the basis of actual days elapsed over a 360-day year. All sums payable hereunder shall be payable at 2356 Collections Center Drive, Chicago, Illinois 60693, or at such other place or places as the holder hereof may from time to time appoint in writing.

Customer may prepay this Note at any time in whole or in part without premium or penalty. Any partial prepayment shall be applied to installments of the Loan Amount in inverse order of maturity.

This Note shall be prepaid in whole or in part to the extent that there are Net Proceeds available from the sale of the following real property parcels (which are all owned (directly or indirectly) by a Credit Party: (i) the property known as "1 and 3 Long Wharf Drive" located in New Haven, Connecticut, (ii) Real Property 1, (iii) Real Property 2, (iv) that certain 34 acre land parcel located in Washington Depot, Connecticut and (v) the property known as "158 South Ocean Boulevard" located in Palm Beach, Florida.

This Note is the Collateral Installment Note referred to in, and is entitled to all of the benefits of the Loan Agreement and any Loan Documents. If Customer shall fail to pay when due any installment or other sum due hereunder, and any such failure shall continue for more than five (5) Business Days after written notice thereof shall have been given by the holder hereof to Customer, or if any other Event of Default shall have occurred and be continuing, then at the option of the holder hereof (or, upon the occurrence of any Bankruptcy Event, automatically, without any action on the part of the holder hereof), and in


addition to all other rights and remedies available to such holder under the Loan Agreement, any Loan Documents, and otherwise, the entire Loan Amount at such time remaining unpaid, together with accrued interest thereon and all other sums then owing by Customer under the Loan Agreement, may be declared to be and thereby become immediately due and payable.

It is expressly understood, however, that nothing contained in the Loan Agreement, any other agreement, instrument or document executed by Customer, or otherwise, shall affect or impair the right, which is unconditional and absolute, of the holder hereof to enforce payment of all sums due under this Note at or after maturity, whether by acceleration or otherwise, or shall affect the obligation of Customer, which is also unconditional and absolute, to pay the sums payable under this Note in accordance with its terms. Except as otherwise expressly set forth herein or in the Loan Agreement, Customer hereby waives presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and formalities in connection with this Note.

Wherever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Note. Notwithstanding any provision to the contrary in this Note, the Loan Agreement or any of the Loan Documents, no provision of this Note, the Loan Agreement or any of the Loan Documents shall require the payment or permit the collection of any Excess Interest. Notwithstanding any provision to the contrary in any of the Loan Documents, no provision of the Loan Documents shall require the payment or permit the collection of Excess Interest. If any Excess Interest is provided for, or is adjudicated as being provided for, in this Note, the Loan Agreement or any of the Loan Documents, then: (a) Customer shall not be obligated to pay any Excess Interest; and (b) if any Excess Interest is provided for, or is adjudicated as being provided for, in, then: (i) Customer shall not be obligated to pay any Excess Interest; and (ii) any Excess Interest that MLBFS may have received under any of the Loan Documents shall, at the option of MLBFS, be applied as a credit against the then unpaid principal balance of this Note, or accrued interest hereon not to exceed the maximum amount permitted by law or refunded to the payor thereof,.

Upon the occurrence and during the continuance of any Default, but without limiting the rights and remedies otherwise available to MLBFS hereunder or waiving such Default, the interest payable by Customer hereunder shall at the option of MLBFS accrue and be payable at the Default Rate. The Default Rate, once implemented, shall continue to apply to the Obligations under this Note, the Loan Agreement or any of the Loan Documents and be payable by Customer until the date MLBFS gives written notice (which shall not be unreasonably delayed or withheld) that such Default has been cured to the satisfaction of MLBFS.

This Note shall be construed in accordance with the laws of the State of Illinois and may be enforced by the holder hereof in any jurisdiction in which the Loan Agreement may be enforced.

IN WITNESS WHEREOF, this Note has been executed by Customer as of the day and year first above written.

MATTHEWS VENTURES HOLDINGS LLC

By: _____
Robert V. Matthews, as Manager

**MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS**

# EXHIBIT C

# FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (this *"Agreement"*) is entered into as of February ___, 2006, by and among MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company (*"MVH"*), ROBERT V. MATTHEWS (*"Guarantor"*; Guarantor and MVH are sometimes referred to herein, individually as an *"Obligor"*, and collectively as the *"Obligors"*),and MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., a Delaware corporation (*"MLBFS"*).

## RECITALS:

A.     MLBFS and MVH have entered into that certain Term Loan and Security Agreement dated as of December 5, 2003 (as amended, supplemented or otherwise modified from time to time, the *"Loan Agreement"*).

B.     Guarantor delivered that certain Guaranty Agreement dated as of December 5, 2003 (as amended, supplemented or otherwise modified from time to time, the *"Guaranty"*).

C.     MLBFS asserts that MVH is in default under the Loan Agreement and the other Loan Documents as more fully set forth in Default Notices dated July 28, 2005 and December 8, 2005 and MLBFS has declared (i) all of MVH's liabilities under the Loan Documents and (ii) all of Guarantor's obligations under the Guaranty to be immediately due and payable and all such outstanding obligations are unconditionally, absolutely and immediately due and payable without further demand, presentment, protest, notice of nonpayment or any other notice of any kind and are free of any counterclaim, defense, objection charge, or right of any setoff or reduction (all of which have been, and are hereby again, waived by the Obligors).

D.     The Loan Agreement, the Guaranty and all other Loan Documents to which any Obligor is a party are valid, legal and binding obligations of each Obligor enforceable against each Obligor in accordance with its terms.

E.     MLBFS asserts that MLBFS has all rights and remedies set forth in the Loan Agreement (including, without limitation, Section 3.6 thereof), the Guaranty and the other Loan Documents, as well as all rights and remedies under all applicable laws, to require immediate payment in full of all Obligations and to enforce any and all provisions of the Loan Documents.

F.     The Obligors desire that MLBFS forbear from taking immediate action to attempt to enforce its right to payment in full of all Obligations.

G.     MLBFS is willing to forbear, but only on the terms and subject to the conditions set forth herein.

In consideration of the premises set forth above, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Definitions.    Terms defined in the Loan Agreement which are used herein shall have the same meanings as are set forth in the Loan Agreement for such terms unless otherwise defined herein.

2.    Recitals.    The recitals set forth above are hereby incorporated into this Agreement; the Obligors hereby represent, warrant and agree that the matters set forth in the recital paragraphs A-F above are true and correct; and the Obligors acknowledge that the recital in paragraph G above is true and correct and that any forbearance of MLBFS is limited to the express terms of this Agreement.

3.    Forbearance; Amendment.    (a) On the terms and subject to the conditions of this Agreement, MLBFS agrees to do all of the following until the occurrence of any Termination Event:    (i) forbear from enforcing its right to immediate payment in full of all Obligations relating to any of the asserted Defaults or Events of Default set forth on Annex I attached hereto (the *"Existing Defaults"*); (ii) forbear from attempting to exercise its remedies for any Existing Default, and (iii) waive all late fees (calculated at 5% of the outstanding principal of the Loan under Section 3.7(f) of the Loan Agreement) due under the Loan Documents on account of the Existing Defaults (*provided, however*, that this waiver does not apply to any (A) other fees due under the Loan Documents including, without limitation, the deferred portion of the Commitment Fee payable pursuant to Section 2.5 of the Loan Agreement or (B) monthly late charges due on each late monthly payment under Section 2 of the Note as set forth on the invoice attached hereto as Exhibit D (the *"Invoice"*)).

For purposes hereof, the term *"Termination Event"* shall mean any one or more of the following events: (i) the occurrence of any Default or Event of Default other than an Existing Default; (ii) any failure by any Obligor for any reason to comply with any term, condition or provision contained in this Agreement; (iii) any representation made by any Obligor in this Agreement or pursuant to it proves to be incorrect or misleading in any material respect when made; or (iv) any event which in the sole discretion of MLBFS has a material adverse effect on the Obligor's financial condition or the Collateral or any Obligor's ability to perform under the Loan Documents.

(b)    The definition of *"Interest Rate"* under MVH's Collateral Installment Note dated December 5, 2003 is hereby amended to delete the same in its entirety and replacing the same with the following:

> *"Interest Rate"* shall mean a variable per annum rate equal to the sum of (i) 2.00% per annum (and, after April 30, 2006, 3.00%per annum), and (ii) the rate from time to time published in the "Money Rates" section of *The Wall Street Journal* as being the *"Prime Rate"* (or, if more than one rate is published as the Prime Rate, then the highest of such rates). Notwithstanding anything to the contrary, if more than one rate is so published, then the interest rate shall be the highest of such published rates. The Interest Rate will change as of the date of publication in *The Wall Street Journal* of a Prime Rate that is different from that published on the preceding Business Day. In the event that *The Wall Street Journal* shall, for any reason, fail or cease to publish the

Prime Rate, MLBFS will choose a reasonably comparable index or source to use as the basis for the Interest Rate.

4.    <u>Conditions</u>. The forbearance set forth in Section 3 above shall become effective only when each of the following conditions have been completely satisfied as determined by MLBFS in its sole and absolute discretion (the date of such satisfaction being hereinafter referred to as the *"Effective Date;"* the Effective Date shall be deemed to be the date of this Agreement unless MLBFS provides written notice to the contrary to the Obligors):

4.1    <u>Documents</u>.    MLBFS shall have received each of the following agreements, instruments and other documents, in each case in form and substance acceptable to MLBFS in its sole and absolute discretion:

(a)    five (5) copies of this Agreement duly executed and delivered by each of the Obligors and MLBFS;

(b)    five (5) copies of a Reaffirmation duly executed and delivered by each of Guarantor, First Wallingford Capital Corporation and First Hartford Capital Corp. in the form of <u>Exhibit A</u> attached hereto;

(c)    five (5) copies of a Release duly executed and delivered by each Obligor (and First Wallingford Capital Corporation and First Hartford Capital Corp.) in the form of <u>Exhibit B</u> attached hereto; and

(d)    such other documents as MLBFS may reasonably request (including, without limitation, those set forth in Section 4.6 hereof) in connection with this Agreement in form and substance satisfactory to MLBFS.

4.2    <u>Representations and Warranties; No Default</u>.  As of the date hereof (and, if different, also as of the Effective Date), the representations and warranties contained herein and in the Loan Agreement shall be true and complete (both immediately before and after giving effect to consummation of the transactions contemplated hereby), and no Default or Event of Default thereunder shall exist other than the Existing Defaults.

4.3    <u>Proceedings</u>. All corporate and other proceedings taken or to be taken in connection with the transactions contemplated hereby and all agreements, instruments, certificates and other documents relating thereto shall be in form and substance satisfactory to MLBFS, as determined in its sole and absolute discretion.

4.4    <u>Payment</u>. (a) MLBFS shall have received on or before February 16, 2006 payment of all past due sums of principal and interest (calculated at the Default Rate) together with the 5% fee due on each payment in the total amount of $519,089.21 all as set forth on the Invoice.

(b)    Obligors shall have paid (i) the fees and expenses of MLBFS' legal counsel, Schiff Hardin LLP in the amount of $31,800 incurred in connection with the

3

Existing Defaults and this Agreement, and (ii) the costs of the title insurance premiums, recording charges, Phase I reports, survey and appraisal required in Section 4.6 below.

4.5   Amendment Fee.   MLBFS shall have received $50,000 as a non-refundable amendment fee on or before February 16, 2006.   MLBFS acknowledges receipt of $25,000 of this amendment fee.

4.6   Guaranty and Mortgage.   On or before February 16, 2006, MLBFS shall have received (a) a guaranty in the form of Exhibit E attached hereto (the *"Guaranty"*) from MVH's affiliate, NHM Realty LLC, a Connecticut limited liability company (*"NHM"*) together with (b) a mortgage, in the form of Exhibit C attached hereto (the *"Mortgage"*) on NHM's real property located in Nantucket, Massachusetts (the *"Nantucket Property"*), in the amount of $3,200,000 together with a policy of title insurance ( the *"Title Policy"*) thereon acceptable to MLBFS and showing no liens thereon prior to the Mortgage and such endorsements as MLBFS shall require, issued by a title company reasonably acceptable to MLBFS (the *"Title Company"*) together with an ALTA/ACSM Survey, a Phase I environmental assessment and an appraisal in each case satisfactory to MLBFS in its sole judgment. Upon the sale or encumbrance of the Nantucket Property NHM will pay MLBFS the amount of $3,200,000 from the Net Proceeds thereof at which time MLBFS shall release the Mortgage and the Guaranty.

4.7.   No Mechanics' Liens; Indemnification.   Obligor shall not suffer or permit any mechanic's lien claims to be filed or otherwise asserted against the Nantucket Property, and Obligor shall promptly, and in any event within thirty (30) days after filing, discharge or cause to be discharged the same in case of the filing of any claims for lien or proceedings for the enforcement thereof; provided that in connection with any such lien or claim which Obligor may in good faith desire to contest, Obligor may contest the same by appropriate legal proceedings diligently prosecuted, but only if Obligor shall furnish to Title Company such security or indemnity requested by the Title Company and permitting the Title company to issue an endorsement to the Title Policy required by updating the same to the date of such mechanic's lien, and insuring the lien of the Mortgage to be superior to all matters affecting title (including filed and unfiled mechanic's liens). Notwithstanding anything contained herein to the contrary, MLBFS shall not, however, be responsible, liable or obligated to any contractor, subcontractors, suppliers, materialmen, laborers, architects, engineers, or any other parties, for services or work performed, or for goods delivered by them or any of them, in and upon the Nantucket Property or employed directly or indirectly in the performance of any work, or for any debts or claims whatsoever accruing in favor of any such parties and against Obligor or others, or against the Nantucket Property. It is expressly understood and agreed that Obligor is not and shall not be an agent of MLBFS for any purpose whatsoever. Neither the execution and delivery by MLBFS of this Agreement, nor the exercise by MLBFS of any of its rights, privileges or remedies hereunder or under applicable law, shall be deemed to render the MLBFS a co-partner, or co-venturer, with the Obligor or with any other person, it being expressly understood, acknowledged and agreed by the parties that all of such rights, privileges and remedies are being conferred upon, and will be exercised by, MLBFS solely in furtherance of its role as a secured party. Obligor agrees to indemnify, defend and hold MLBFS harmless from and against any and all liabilities, obligations, losses, damages (excluding consequential damages), claims, costs and expenses (including, in the event Obligor fails to use diligence in connection with such matter, reasonable

attorneys' fees and court costs) of whatever kind or nature, which may be imposed on MLBFS as a result of such mechanics' liens, or with respect to MLBFS entering into this Agreement, by reason of a court construing Obligor and MLBFS as having the relationship of joint venturers or partners or Obligor or MLBFS being deemed to have acted as agent for the other (notwithstanding, in each case, the parties' expressed contrary intention). This Section 4.7 shall survive the termination or expiration of this Agreement to the extent permitted under applicable law.

5.      Representations, Warranties and Agreements of the Obligors.

        5.1     Each of the Obligors represents and warrants that: (a) the execution and delivery by such Obligor of this Agreement and the performance of such Obligor's obligations hereunder: (i) are within the corporate powers of such Obligor; (ii) are duly authorized by the Board of Directors of such Obligor, and, if necessary, the stockholders of such Obligor; (iii) are not in contravention of the terms of the Charter or By-Laws of either Obligor, or of any contract, instrument, indenture or other agreement or undertaking to which either Obligor is a party or by which either Obligor or any of its property is bound or any judgment, decree or order applicable to either Obligor; (iv) do not require any governmental consent, registration or approval or any filing with or notice to any governmental entity or agency; (v) do not contravene any governmental restriction binding upon either Obligor; and (vi) will not result in the imposition of any lien, charge, security interest or encumbrance upon any property of either Obligor under any indenture, mortgage, deed of trust, loan or credit agreement or other agreement or instrument to which either Obligor is a party or by which it or any of its property may be bound or affected (other than Liens in favor of Agent under the Loan Agreement); (b) this Agreement has been duly executed and delivered by each Obligor party thereto and constitutes the legal, valid and binding obligation of such Obligor, enforceable against such Obligor in accordance with its terms; (c) each of the Loan Agreement and each of the other Financing Agreements constitute the legal, valid and binding obligation of the Obligor party thereto, enforceable against such Obligor in accordance with its terms; (d) as of the date hereof, and (after giving effect hereto and consummation of the transactions contemplated hereby) as of the Effective Date, there exists no Default or Event of Default other than the Existing Defaults; and (e) all conditions set forth in Section 4 have been satisfied in full (provided that no representation or warranty is made as to Agent's or any Lender's acceptance or satisfaction with any matter).

        5.2     Each of the Obligors hereby reaffirms all covenants, representations and warranties made in the Loan Agreement and all other Financing Agreements to which it is a party.

6.      Reference to the Effect on the Loan Agreement.

        6.1     Except as otherwise specifically provided herein, all Financing Agreements, and all other documents, instruments and agreements executed and/or delivered in connection therewith, shall remain in full force and effect, and are hereby ratified and confirmed.

        6.2     The execution, delivery and effectiveness of this Agreement shall not (a) amend the Loan Agreement or any other Financing Agreement, (b) operate as a waiver of any right, power or remedy of Agent or any Lender including, without limitation, all rights, powers

5

and remedies of Agent and any Lender existing as a result of the Existing Defaults, or (c) constitute a waiver of, or consent to any departure from, any provision of the Loan Agreement, or any other documents, instruments and agreements executed and/or delivered in connection therewith including, without limitation, the Existing Defaults. The Obligors acknowledge the existence of the Existing Defaults and confirm their understanding that the Agent and each Lender reserve all of their rights and remedies with respect to the Existing Defaults (which rights and remedies may be exercised at any time with or without notice or demand subject only to the express terms of this Agreement).

6.3    This Agreement shall be deemed a Financing Agreement for the purposes of the Loan Agreement.

6.4    Each of the Obligors acknowledges and agrees that (a) immediately upon expiration of the forbearance provided under Section 3 above (the *"Forbearance Expiration Time"*), the Agent and the Lenders shall have all of their rights and remedies with respect to the Existing Defaults to the same extent, and with the same force and effect, as if the forbearance set forth in this Agreement had never been effective; (b) it will not assert and hereby forever waives any right to assert that the Agent or the Lenders are obligated in any way to continue after, the Forbearance Expiration Time, to forbear from enforcing any of its or their rights or remedies or that the Agent or any Lender is not entitled to act on the Existing Defaults after the Forbearance Expiration Time immediately and as if there had never been any forbearance; and (c) neither the Agent nor any Lender is under any commitment of any kind with respect to reaching any agreement as to any amendment of the Loan Agreement or any other Financing Agreement or otherwise owes any obligation of any kind to any Obligor with respect to the Loan Agreement or any other Financing Agreement.

7.    Governing Law.    This Agreement shall be governed by and construed in accordance with the internal laws (as opposed to conflicts of law provisions) of the State of Illinois.

8.    Headings.    Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

9.    Counterparts.    This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument. Delivery by any party of telecopied copies of executed counterparts hereof shall constitute execution and delivery hereof by such party.

10.    Entire Agreement.    This Agreement and the exhibits and annexes hereto embody the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

6

[Signature page follows]

**IN WITNESS WHEREOF**, this Agreement has been duly executed as of the day and year first above written.

MATTHEWS VENTURES HOLDINGS LLC

By:_____

    Robert V. Matthews

    Its Manager

_____

Robert V. Matthews

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

By:_____

Title:_____

## EXHIBIT A

**Form of Reaffirmation**

See Attached

## REAFFIRMATION

THIS REAFFIRMATION (*"Reaffirmation"*) is made as of February ___, 2006, by ROBERT V. MATTHEWS, FIRST WALLINGFORD CAPITAL CORPORATION and FIRST HARTFORD CAPITAL CORP. (collectively, the *"Undersigned"*) in favor of MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., a Delaware corporation (*"MLBFS"*). Terms defined in the Loan Agreement which are used herein shall have the same meanings as are set forth in the below defined Loan Agreement for such terms unless otherwise defined herein.

## RECITALS

A.     The Undersigned have each executed and delivered a separate Unconditional Guaranty dated December 5, 2003 (each a *"Guaranty"*) in connection with that certain Term Loan and Security Agreement dated as of December 5, 2003 (as amended, supplemented or otherwise modified from time to time, the *"Loan Agreement"*) between Matthews Ventures Holdings LLC, a Connecticut limited liability company (*"MVH"*) and MLBFS.

B.     Each of the Undersigned desires that MLBFS enter into that certain Forbearance Agreement, dated as of the date hereof, with the Undersigned and MVH (the *"Agreement"*).

NOW, THEREFORE, in consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Undersigned agrees as follows:

1.     Each of the Undersigned hereby consents to the terms of the Agreement and ratifies and reaffirms all of its respective obligations and liabilities arising under or relating to each of the Loan Documents (including without limitation, its respective Guaranty).

2.     The Loan Documents (including without limitation, each Guaranty) are, and shall remain, in full force and effect in accordance with its terms.

3.     The execution, delivery and effectiveness of the Agreement shall not diminish, or operate as a waiver of, any right, power or remedy of MLBFS under each Guaranty, the Loan Agreement or any other "Loan Document" (as defined in the Loan Agreement).

4.     Notice of acceptance hereof is hereby waived by each of the Undersigned.

**IN WITNESS WHEREOF**, this Reaffirmation has been duly executed and delivered as of the date first above written.

_____
Robert V. Matthews


**FIRST WALLINGFORD CAPITAL CORPORATION**

By: _____
      Robert V. Matthews
      President


**FIRST HARTFORD CAPITAL CORP.**

By: _____
      Robert V. Matthews
      President

**EXHIBIT B**

**Form of Release**

See Attached

# RELEASE

As of February ___, 2006

Merrill Lynch Business Financial Services, Inc.
222 North LaSalle Street
Chicago, Illinois 60601

Ladies and Gentlemen:

Reference is hereby made to that certain Forbearance Agreement dated as of the date hereof (the *"Agreement"*) among Matthews Venture Holdings LLC *"MVH"*), Robert V. Matthews (*"Guarantor"*) and Merrill Lynch Business Financial Services Inc. (*"MLBFS"*) and the Loan Agreement (as defined in the Agreement). Capitalized terms used herein shall have the meanings ascribed to them in the Agreement and in the Loan Agreement unless otherwise defined herein.

To induce you to enter into the Agreement and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged by each of the undersigned, each of the undersigned for itself and its shareholders and affiliates and the successors, assigns, heirs and representatives of each of the foregoing does hereby fully, finally and unconditionally release and forever discharge MLBFS and each of its shareholders, affiliates, agents, attorneys, employees, directors, and officers and the successors, assigns, heirs and representatives of each of the foregoing, from any and all debts, claims, obligations, damages, costs, attorneys' fees, suits, demands, liabilities, actions, proceedings and causes of action, in each case whether known or unknown, contingent or fixed, direct or indirect and of whatever nature or description and whether in law or in equity under contract, tort, statute or otherwise (collectively, *"Claims"*), which any of the undersigned has heretofore had or now or hereafter can, shall or may have by reason of any act, omission or thing whatsoever done or omitted to be done on or prior to the Agreement Effective Date arising out of, connected with or related in any way to the Agreement, the Loan Agreement (including any predecessor agreement thereto) or any Loan Document (including without limitation any predecessor agreements thereto and any Guaranty), any proposal letter, commitment letter or term sheet, or any act, event or transaction related or attendant thereto, the agreements of MLBFS contained therein, the possession, use, operation or control of any of the assets of MVH, the Guarantor, the undersigned or any of their Subsidiaries, the making of any Loans or the Collateral.

Acceptance hereof and proof of reliance hereon by MLBFS are hereby waived by each of the undersigned. The release made herein by each of the undersigned is independent of the releases made by each of the other undersigned. The terms of this letter shall be construed in accordance with and governed by the internal laws of the State of Illinois.

Customer:

**MATTHEWS VENTURES HOLDINGS LLC**

By: _____
    Robert V. Matthews
    Its Manager

Guarantor:

_____
**Robert V. Matthews**

**FIRST WALLINGFORD CAPITAL CORPORATION**

By: _____
    Robert V. Matthews
    President

**FIRST HARTFORD CAPITAL CORP.**

By: _____
    Robert V. Matthews
    President

**<u>EXHIBIT C</u>**

**Form of Mortgage**

See Attached

MORTGAGE

**EXHIBIT D**

**Invoice**

See Attached

**INVOICE**

## ANNEX I

### Existing Defaults

1.   Failure to make required monthly installment payments of principal and interest (and late fees) in complete amounts (as set forth in Formal Demand for Payment letter dated July 28, 2005) and continuing each month thereafter to and including December 1, 2005.

2.   Failure to pay 100% of the net proceeds of sale of real property located at 158 South Ocean Boulevard, Palm Beach, Florida after said property was sold on or about February 25, 2005.

3.   Failure to pay late charges and interest at Default Rate as demanded per Formal Demand for Payment letter dated July 28, 2005.

CH2\ 1344492.4

MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS

# EXHIBIT D

Private Client Group

Merrill Lynch Business
Financial Services Inc.
222 North LaSalle Street, 17th Floor
Chicago, Illinois 60601
312/269-1357
FAX 312/269-1345

 **Merrill Lynch**

Edmond J. Blough
Vice President

December 18, 2007

<u>Via Overnight Delivery and Regular Mail</u>

Matthews Ventures Holdings LLC
250 Royal Palm Way, Suite 300
Palm Beach, FL 33480
Attention: Mr. Robert V. Matthews

**FORMAL DEMAND FOR PAYMENT**

Re: $6,750,000 Term Loan to Matthews Ventures Holdings LLC (*"MVH"*) from Merrill Lynch Business
Financial Services Inc. (*"MLBFS"*)

Gentlemen:

Reference is hereby made to (a) that certain Term Loan and Security Agreement dated December 5,
2003 (as amended, the *"Loan Agreement"*) between MVH and MLBFS (b) that certain Unconditional Guaranty
dated December 5, 2005 of Robert V. Matthews in favor of MLBFS (as amended, the *"Guaranty"*) and (c) the
Forbearance Agreement dated February 2006 (the *"Forbearance Agreement"*). Unless otherwise defined
herein, all capitalized terms shall have the meanings set forth in the above referenced Loan Agreement, to the
extent defined therein.

You are in default under the Loan Agreement in the following respect, among others:

- As of the date hereof, MVH failed to make payment of the required Term Loan payments due on
November 1, 2007 and December 1, 2007. The most recent payments totaling $102,482.08
required under the Loan Agreement remain past due (collectively, the "Installment Payment").

- Pursuant to the terms of Section 3.3(i) of the Loan Agreement, MLBFS is entitled to receive 100%
of the net proceeds of the sale of certain real property located at One and Three Long Warf Drive
(the *"Connecticut Property"*), as a permanent reduction to the Loan. The Connecticut Property was
sold on or about February 5, 2007 and no payment of net proceeds from said sale has been made
to MLBFS (the "Net Proceeds").

Based on the foregoing, MLBFS hereby demands the immediate payment of the Installment Payment
and the Net Proceeds. If payment of the Installment Payment and Net Proceed are not received by MLBFS on
or before December 28, 2007, an Event of Default under the Loan Documents shall have occurred; and as
such upon such an Event of Default, you are hereby notified that MLBFS declares (a) all of MVH's liabilities
under the Loan Documents and (b) all of Robert V. Matthew's liabilities under the Guaranty to be immediately
due and payable. As of this date, the amount outstanding is $2,500,499.87 in principal, accrued interest and
late charges, plus a $16,875.00 Commitment Fee, plus attorneys' fees and other costs of collection
(collectively, and together with all amounts accruing after this date, such amounts are referred to as the
*"Obligations"*).

Interest continues to accrue on the principal amount of the Obligations at the Default Rate (i.e., an
additional 2 percent over the Interest Rate). In addition, the late charges set forth in Section 2 of the Collateral
Installment Note dated December 5, 2003 (i.e., 5 percent of the overdue amount) now apply to the Installment
Payment. Be advised that if payment of the Installment Payment (plus all late fees thereunder) and Net

Merrill Lynch Business Financial Services Inc.

December 18, 2007
Page 2 of 2

Proceeds is not received by MLBFS on or before December 28, 2007, then late fee shall thereupon apply to the entire amount of the Obligations.

MLBFS demands immediate payment of the Installment Payment and the Net Proceeds. If the Installment Payment and Net Proceeds are not immediately received, as required herein, MLBFS will have no recourse but to file suit to enforce all of its remedies under the Loan Documents and applicable law.

This letter does not waive or amend any of the terms or provisions of the Loan Documents or any of the other instruments, agreements or documents pertaining thereto. MLBFS reserves all of its rights and remedies under the Loan Documents and applicable law, and may exercise them at any time.

Sincerely,

Merrill Lynch Business Financial Services Inc.

By: _____
Edmond J. Bleugh
Vice President

cc:  Mr. Robert V. Matthews
     59 Elm Street
     New Haven, Connecticut 06510
     (Via Overnight Delivery & Via Regular Mail)

     Randy P. Kabakoff
     Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
     CityPlace I - 22nd Floor
     185 Asylum Street
     Hartford, CT 06103-3460
     (Via Overnight Delivery & Via Regular Mail)

**MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS**

# EXHIBIT E

 **Merrill Lynch**

UNCONDITIONAL GUARANTY

**FOR VALUE RECEIVED**, and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** ("*MLBFS*") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with (i) **MATTHEWS VENTURES HOLDINGS LLC**, a limited liability company organized and existing under the laws of the State of Connecticut (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "*Matthews*") under: (a) that certain **TERM LOAN AND SECURITY AGREEMENT DATED AS OF DECEMBER _5_, 2003** between MLBFS and Matthews (the "*Matthews Loan Agreement*"), (b) any "*Loan Documents*", as that term is defined in the Matthews Loan Agreement, including, without limitation, the **NOTE(S)** incorporated by reference in the Matthews Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Matthews Loan Agreement or any related Loan Documents and (ii) **STROMBERG LLC**, a limited liability company organized and existing under the laws of the State of Connecticut (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "*Stromberg*" and, together with Matthews, referred to collectively herein as the "*Customers*") under: (a) that certain **TERM LOAN AND SECURITY AGREEMENT DATED AS OF DECEMBER _5_, 2003** between MLBFS and Stromberg (the "*Stromberg Loan Agreement*"), (b) any "*Loan Documents*", as that term is defined in the Stromberg Loan Agreement, including, without limitation, the **NOTE(S)** incorporated by reference in the Stromberg Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Stromberg Loan Agreement or any related Loan Documents (the documents set forth in (i) and (ii) above are collectively referred to as the "*Guaranteed Documents*"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **the undersigned, FIRST HARTFORD CAPITAL CORP.**, a corporation organized and existing under the laws of the State of Connecticut ("*Guarantor*"), **hereby unconditionally guarantees to MLBFS**: (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customers to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customers of each and every other covenant and warranty of Customers set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customers to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "*Obligations*"). Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customers.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "*Bankruptcy Event*", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "*Returned Payment*"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customers or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customers in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customers or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customers or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customers, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customers or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under either the Matthews Loan Agreement, the Stromberg Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand

or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("*MLPF&S*"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns. If there is more than one guarantor of the Obligations, all of the obligations and agreements of Guarantor are joint and several with such other guarantors.

Notwithstanding anything contained in this Guaranty to the contrary, the liability of Guarantor hereunder is limited to the proceeds of the Open-End Mortgage Deed, Assignment of Rents and Security Agreement from Guarantor to Merrill Lynch Business Financial Services, Inc. of even date herewith

This Guaranty shall be governed by the laws of the State of Illinois. **WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMERS OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMERS MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS.** Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of December ___, 2003.

Guarantor:
**FIRST HARTFORD CAPITAL CORP.**

_____
**ROBERT V. MATTHEWS**
Its President

Witness: _____

Printed Name: _Stew Bartelstone_

Address:

59 Elm Street
New Haven, Connecticut 06510

CH2\ 1058562.3

**MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS**

# EXHIBIT F



**Private Client Group**

**Merrill Lynch Commercial Finance Corp.**
222 North LaSalle Street, 17th Floor
Chicago, Illinois 60601
312/269-1357
FAX 312/269-1345

Edmond J. Blough
Vice President

January 14, 2008

Via Overnight Delivery and Regular Mail

Mr. Robert V. Matthews
59 Elm Street
New Haven, Connecticut 06510
(Via Overnight Delivery & Via Regular Mail)

Mr. Robert V. Matthews
115 Lower Church Road
Washington Depot, CT 06793
(Via Overnight Delivery & Via Regular Mail)

Mr. Robert V. Matthews
101 Casa Bendita
Palm Beach, FL 33480
(Via Overnight Delivery & Via Regular Mail)

First Hartford Capital Corporation
59 Elm Street
New Haven, Connecticut 06510
(Via Overnight Delivery & Via Regular Mail)

First Wallingford Capital Corporation
59 Elm Street
New Haven, Connecticut 06510
(Via Overnight Delivery & Via Regular Mail)

## FORMAL DEMAND FOR PAYMENT

Re: $6,750,000 Term Loan to Matthews Ventures Holdings LLC (*"MVH"*) from Merrill Lynch
Commercial Finance Corp., as assignee of Merrill Lynch Business Financial Services Inc.
(*"Lender"*)

Gentlemen:

Reference is hereby made to (a) that certain Term Loan and Security Agreement dated December 5, 2003 (as amended, the *"Loan Agreement"*) between MVH and Lender; (b) that certain Forbearance Agreement dated as of February 17, 2006 (the "Forbearance Agreement"); (c) that certain Unconditional Guaranty dated as of December 5, 2005 of Robert V. Matthews (*"Matthews"*) in favor of Lender; (d) that certain Unconditional Guaranty dated as of December 5, 2005 of First Hartford Capital Corporation (*"Hartford"*) in favor of Lender; (e) that certain Unconditional Guaranty dated as of December 5, 2005 of First Wallingford Capital Corporation (*"Wallingford"*) in favor of Lender; and (f) that certain Reaffirmation Agreement dated as of February 17, 2006 between Matthews, Hartford and Wallingford in favor of Lender. Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the above-referenced Loan Agreement, to the extent defined therein.

**Merrill Lynch Commercial Finance Corp.**

Mr. Robert V. Matthews
First Hartford Capital Corporation
First Wallingford Capital Corporation
January 14, 2008
Page 2 of 4

The foregoing guaranties are collectively referred to as the "*Guaranty*".   Lender is the assignee of the interest of Merrill Lynch Business Financial Services Inc. ("MLBFS") in and to the Loan Documents and all references therein to MLBFS shall be deemed to refer to Lender.

The Obligations guarantied by you under the Guaranty are immediately due and payable due to the following events, among other things:

- As of the date hereof, MVH failed to make payment of the required Term Loan payments due on December 1, 2007 and January 1, 2008.  The most recent payments totaling $101,037.89 required under the Loan Agreement remain past due (collectively, the "Installment Payment").

- Pursuant to the terms of Section 3.3(i) of the Loan Agreement, Lender is entitled to receive 100% of the net proceeds of the sale of certain real property located at One and Three Long Warf Drive (the "*Connecticut Property*"), as a permanent reduction to the Loan.  The Connecticut Property was sold on or about February 5, 2007 and no payment of net proceeds from said sale has been made to Lender (the "Net Proceeds").

- On December 18, 2007, MLBFS by notice declared all of the Obligations under the Loan Documents to be immediately due and payable as of December 28, 2007, if the foregoing payments were not made by that date.

- On January 11, 2008, Lender by notice demanded payment in full of the $2,486,174.61 unpaid amount of the Obligations which were past due and payable as of the close of business on January 10, 2008.

A copy of the notices by MLBFS and Lender to MVH dated December 18, 2007 and January 11, 2008 are enclosed.

As of the close of business on January 10, 2008, $2,469,299.81 in principal, accrued interest and late charges, plus a $16,875.00 Commitment Fee, plus attorneys' fees and other costs of collection (collectively, and together with all amounts accruing after this date, such amounts are referred to as the "*Obligations*") remains outstanding.  Demand is hereby made upon Obligors, for the full and immediate repayment of $2,486,174.61 plus additional interest, attorneys' fees and all other charges allowable under the Loan Documents, representing all amounts currently outstanding under the Loan Documents.   Interest continues to accrue on the principal amount of the Obligations at the Default Rate (i.e., an additional 2 percent over the Interest Rate).

Lender demands immediate payment of the Obligations guarantied by you under the Guaranty.  Unless a certified or cashier's check or wire transfer for the amount of $2,486,174.61 in principal, interest, and late fees, plus additional interest at the Default Rate, attorneys' fees and all other charges allowable under the Loan Documents that have accrued and will continue to accrue under the Loan Documents, is received by Lender by 5:00 p.m. Central Standard Time on January 22, 2008, Lender may have no choice but to take such lawful action as may be necessary to protect its rights in this matter, including, without limitation, immediately instituting appropriate legal proceedings against you under the Guaranty and any collateral security therefor.

Notwithstanding anything contained in this letter, including, but not limited to, the time given to make payment, this letter:

(i)   does not in any manner constitute any waiver of either:

   (a)   any of our rights, remedies or powers pursuant to the Loan Documents or any other agreement, document or instrument or applicable law, or

**Merrill Lynch Commercial Finance Corp.**

Mr. Robert V. Matthews
First Hartford Capital Corporation
First Wallingford Capital Corporation
January 14, 2008
Page 3 of 3

     (b)     any Event of Default (howsoever defined) under the Loan Documents, and

    (ii)  is not to be construed as an agreement by us to allow any cure periods at a later date not specifically provided for in the Loan Documents or any other applicable agreement, document or instrument. As of the present date, Lender and Obligors (collectively referred to as the "Parties") have not formally consented to any repayment plan; therefore, the indebtedness owed to Lender by Obligors remains fully matured, unpaid, in a state of uncured default and immediately due and payable in full. Obligors are hereby given formal written notice that there are no unwritten oral agreements between the Parties. No amendment or modification of the Loan Documents or any of the Other Agreements to which any of the Obligors are a party shall be effective unless in writing signed by Lender and each Obligor.

Sincerely,

Merrill Lynch Commercial Finance Corp.

By:
    Edmond J. Blough
    Vice President

Enclosures:

December 18, 2007 and January 14, 2008 letters from Lender to MVH

cc:

Matthews Ventures Holdings LLC
250 Royal Palm Way, Suite 300
Palm Beach, FL 33480
Attention: Mr. Robert V. Matthews

Randy P. Kabakoff
Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
CityPlace I - 22nd Floor
185 Asylum Street
Hartford, CT 06103-3460
(Via Overnight Delivery & Via Regular Mail)

CH2\2274786.1



**Private Client Group**

**Merrill Lynch Commercial Finance Corp.**
222 North LaSalle Street, 17th Floor
Chicago, Illinois 60601
312/269-1357
FAX 312/269-1345

Edmond J. Blough
Vice President

January 14, 2008

<u>Via Overnight Delivery and Regular Mail</u>

Matthews Ventures Holdings LLC
250 Royal Palm Way, Suite 300
Palm Beach, FL 33480
Attention: Mr. Robert V. Matthews

Matthews Ventures Holdings LLC
59 Elm Street
New Haven, Connecticut 06510
Attention: Mr. Robert V. Matthews

### FORMAL DEMAND FOR PAYMENT IN FULL

Re:    $6,750,000 Term Loan to Matthews Ventures Holdings LLC ("*MVH*") from Merrill Lynch
Commercial Finance Corp., as assignee of Merrill Lynch Business Financial Services Inc.
("*Lender*")

Gentlemen:

Reference is hereby made to (a) that certain Term Loan and Security Agreement dated December 5, 2003 (as amended, the *"Loan Agreement"*) between MVH and Lender, and (b) that certain Forbearance Agreement dated as of February 17, 2006 (the "Forbearance Agreement") between MVH, Lender and Robert V. Matthews. Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the above-referenced Loan Agreement, to the extent defined therein. Lender is the assignee of the interest of Merrill Lynch Business Financial Services Inc. ("MLBFS") in and to the Loan Documents and all references therein to MLBFS shall be deemed to refer to Lender.

For purposes of this letter, (i) Customer and Guarantors will collectively be referred to as the "Obligors," and (ii) the Loan Agreement, the Collateral Installment Note, and the Guaranties, and the Other Agreements will collectively be referred to as the "Loan Documents." Capitalized terms used in this letter and not defined herein shall have the meaning set forth in the Loan Documents.

As you are aware, on December 18, 2007, Lender sent Obligors a Formal Demand Notice (the "Demand Notice"), in which Lender informed Obligors that the payments due under the Loan Documents were delinquent. The Demand Notice also made formal written demand upon Obligors, to provide Lender with the past due amount under the Loan Documents, on or before December 28, 2007. Since having made formal demand upon Obligors, Lender has yet to receive full and satisfactory payment on account of the indebtedness under the Loan Documents.

Therefore, in light of Obligors' failure to fully comply with the demands set forth in the Demand Notice, Lender has no alternative but to advise Obligors that:

(a) One or more Events of Default have occurred and are continuing under the Loan Documents;

(b) All indebtedness outstanding under the Loan Agreement have been accelerated and are now immediately due and payable;

**Merrill Lynch Commercial Finance Corp**

Matthews Ventures Holdings LLC
January 14, 2008
Page 2 of 3

    (c)    As a result of the occurrence and continuance of an Event of Default under the Loan Agreement, the Interest Rate with respect to the WCMA Line of Credit continues to accrue at the "Default Interest Rate" as defined in the Loan Agreement.

As of the close of business on January 10, 2008, $2,469,299.81 in principal, accrued interest and late charges, plus a $16,875.00 Commitment Fee, plus attorneys' fees and other costs of collection (collectively, and together with all amounts accruing after this date, such amounts are referred to as the *"Obligations"*) remains outstanding. Demand is hereby made upon Obligors, for the full and immediate repayment of $2,486,174.61 plus additional interest, attorneys' fees and all other charges allowable under the Loan Documents, representing all amounts currently outstanding under the Loan Documents.

Obligors are further notified that, unless a certified or cashier's check or wire transfer for the amount of $2,486,174.61 in principal, interest, and late fees, plus additional interest at the Default Rate, attorneys' fees and all other charges allowable under the Loan Documents that have accrued and will continue to accrue under the Loan Documents, is received by Lender by 5:00 p.m. Central Standard Time on January 22, 2008, Lender may have no choice but to take such lawful action as may be necessary to protect its rights in this matter, including, without limitation:

    (i)    immediately instituting appropriate legal proceedings against you and any collateral security for the Obligations to enforce its rights under applicable law and the Loan Documents and

    (ii)    immediately instituting appropriate legal proceedings against the other Obligors to recover the Obligations under their guaranties and the mortgages securing their obligations thereunder.

Notwithstanding anything contained in this letter, including, but not limited to, the time given to make payment, this letter:

    (i)    does not in any manner constitute any waiver of either:

        (a)    any of our rights, remedies or powers pursuant to the Loan Documents or any other agreement, document or instrument or applicable law, or

        (b)    any Event of Default (howsoever defined) under the Loan Documents, and

(ii) is not to be construed as an agreement by us to allow any cure periods at a later date not specifically provided for in the Loan Documents or any other applicable agreement, document or instrument. As of the present date, Lender and Obligors (collectively referred to as the "Parties") have not formally consented to any repayment plan; therefore, the indebtedness owed to Lender by Obligors remains fully matured, unpaid, in a state of uncured default and immediately due and payable in full. Obligors are hereby given formal written notice that there are no unwritten oral agreements between the Parties. No amendment or modification of the Loan Documents or any of the Other Agreements to which any of the Obligors are a party shall be effective unless in writing signed by Lender and each Obligor.

**Merrill Lynch Commercial Finance Corp**

Matthews Ventures Holdings LLC
January 14, 2008
Page 3 of 3

If you have any questions with respect to this notification, please contact the undersigned at (312) 269-1357.

Signed on behalf of,

Merrill Lynch Commercial Finance Corp.

By: _____
    Edmond J. Blough
    Vice President

cc:    Mr. Robert V. Matthews
        59 Elm Street
        New Haven, Connecticut 06510
        (Via Overnight Delivery & Via Regular Mail)

        Mr. Robert V. Matthews
        115 Lower Church Road
        Washington Depot, CT 06793
        (Via Overnight Delivery & Via Regular Mail)

        Mr. Robert V. Matthews
        101 Casa Bendita
        Palm Beach, FL 33480
        (Via Overnight Delivery & Via Regular Mail)

        First Hartford Capital Corporation
        59 Elm Street
        New Haven, Connecticut 06510
        (Via Overnight Delivery & Via Regular Mail)

        First Wallingford Capital Corporation
        59 Elm Street
        New Haven, Connecticut 06510
        (Via Overnight Delivery & Via Regular Mail)

        Randy P. Kabakoff
        Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
        CityPlace I - 22nd Floor
        185 Asylum Street
        Hartford, CT 06103-3460
        (Via Overnight Delivery & Via Regular Mail)

CH2\2274782.1



Private Client Group

**Merrill Lynch Business**
Financial Services Inc.
222 North LaSalle Street, 17th Floor
Chicago, Illinois 60601
312/269-1357
FAX 312/269-1345

Edmond J. Blough
Vice President

December 18, 2007

<u>Via Overnight Delivery and Regular Mail</u>

Matthews Ventures Holdings LLC
250 Royal Palm Way, Suite 300
Palm Beach, FL 33480
Attention: Mr. Robert V. Matthews

### FORMAL DEMAND FOR PAYMENT

Re: $6,750,000 Term Loan to Matthews Ventures Holdings LLC (*"MVH"*) from Merrill Lynch Business
Financial Services Inc. (*"MLBFS"*)

Gentlemen:

Reference is hereby made to (a) that certain Term Loan and Security Agreement dated December 5,
2003 (as amended, the *"Loan Agreement"*) between MVH and MLBFS (b) that certain Unconditional Guaranty
dated December 5, 2005 of Robert V. Matthews in favor of MLBFS (as amended, the *"Guaranty"*) and (c) the
Forbearance Agreement dated February 2006 (the "Forbearance Agreement"). Unless otherwise defined
herein, all capitalized terms shall have the meanings set forth in the above referenced Loan Agreement, to the
extent defined therein.

You are in default under the Loan Agreement in the following respect, among others:

- As of the date hereof, MVH failed to make payment of the required Term Loan payments due on
  November 1, 2007 and December 1, 2007. The most recent payments totaling $102,482.08
  required under the Loan Agreement remain past due (collectively, the "Installment Payment").

- Pursuant to the terms of Section 3.3(i) of the Loan Agreement, MLBFS is entitled to receive 100%
  of the net proceeds of the sale of certain real property located at One and Three Long Warf Drive
  (the *"Connecticut Property"*), as a permanent reduction to the Loan. The Connecticut Property was
  sold on or about February 5, 2007 and no payment of net proceeds from said sale has been made
  to MLBFS (the "Net Proceeds").

Based on the foregoing, MLBFS hereby demands the immediate payment of the Installment Payment
and the Net Proceeds. If payment of the Installment Payment and Net Proceed are not received by MLBFS on
or before December 28, 2007, an Event of Default under the Loan Documents shall have occurred; and as
such upon such an Event of Default, you are hereby notified that MLBFS declares (a) all of MVH's liabilities
under the Loan Documents and (b) all of Robert V. Matthew's liabilities under the Guaranty to be immediately
due and payable. As of this date, the amount outstanding is $2,500,499.87 in principal, accrued interest and
late charges, plus a $16,875.00 Commitment Fee, plus attorneys' fees and other costs of collection
(collectively, and together with all amounts accruing after this date, such amounts are referred to as the
*"Obligations"*).

Interest continues to accrue on the principal amount of the Obligations at the Default Rate (i.e., an
additional 2 percent over the Interest Rate). In addition, the late charges set forth in Section 2 of the Collateral
Installment Note dated December 5, 2003 (i.e., 5 percent of the overdue amount) now apply to the Installment
Payment. Be advised that if payment of the Installment Payment (plus all late fees thereunder) and Net

Merrill Lynch Business Financial Services Inc.

December 18, 2007
Page 2 of 2

Proceeds is not received by MLBFS on or before December 28, 2007, then late fee shall thereupon apply to the entire amount of the Obligations.

MLBFS demands immediate payment of the Installment Payment and the Net Proceeds. If the Installment Payment and Net Proceeds are not immediately received, as required herein, MLBFS will have no recourse but to file suit to enforce all of its remedies under the Loan Documents and applicable law.

This letter does not waive or amend any of the terms or provisions of the Loan Documents or any of the other instruments, agreements or documents pertaining thereto. MLBFS reserves all of its rights and remedies under the Loan Documents and applicable law, and may exercise them at any time.

Sincerely,

Merrill Lynch Business Financial Services Inc.

By
Edmond J. Blough
Vice President

cc: Mr. Robert V. Matthews
    59 Elm Street
    New Haven, Connecticut 06510
    (Via Overnight Delivery & Via Regular Mail)

    Randy P. Kabakoff
    Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
    CityPlace I - 22nd Floor
    185 Asylum Street
    Hartford, CT 06103-3460
    (Via Overnight Delivery & Via Regular Mail)

**MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS**

# EXHIBIT G


# Merrill Lynch

**UNCONDITIONAL GUARANTY**

**FOR VALUE RECEIVED,** and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** (*"MLBFS"*) to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with (i) **MATTHEWS VENTURES HOLDINGS LLC**, a limited liability company organized and existing under the laws of the State of Connecticut (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as *"Matthews"*) under: (a) that certain **TERM LOAN AND SECURITY AGREEMENT DATED AS OF DECEMBER _5_, 2003** between MLBFS and Matthews (the *"Matthews Loan Agreement"*), (b) any *"Loan Documents"*, as that term is defined in the Matthews Loan Agreement, including, without limitation, the **NOTE(S)** incorporated by reference in the Matthews Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Matthews Loan Agreement or any related Loan Documents and (ii) **STROMBERG LLC**, a limited liability company organized and existing under the laws of the State of Connecticut (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as *"Stromberg"* and, together with Matthews, referred to collectively herein as the *"Customers"*) under: (a) that certain **TERM LOAN AND SECURITY AGREEMENT DATED AS OF DECEMBER _5_, 2003** between MLBFS and Stromberg (the *"Stromberg Loan Agreement"*), (b) any *"Loan Documents"*, as that term is defined in the Stromberg Loan Agreement, including, without limitation, the **NOTE(S)** incorporated by reference in the Stromberg Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Stromberg Loan Agreement or any related Loan Documents (the documents set forth in (i) and (ii) above are collectively referred to as the *"Guaranteed Documents"*), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **the undersigned, FIRST WALLINGFORD CAPITAL CORPORATION**, a corporation organized and existing under the laws of the State of Connecticut (*"Guarantor"*), **hereby unconditionally guarantees to MLBFS:** (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customers to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customers of each and every other covenant and warranty of Customers set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customers to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the *"Obligations"*). Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customers.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any *"Bankruptcy Event"*, as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a *"Returned Payment"*), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customers or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customers in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customers or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customers or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customers, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customers or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under either the Matthews Loan Agreement, the Stromberg Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand

or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("*MLPF&S*"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns. This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "*Bankruptcy Event*", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "*Returned Payment*"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customers or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customers in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customers or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customers or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customers, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customers or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under either the Matthews Loan Agreement, the Stromberg Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("*MLPF&S*"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the

Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns. This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customers or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customers in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customers or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customers or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customers, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customers or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under either the Matthews Loan Agreement, the Stromberg Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including

without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns. If there is more than one guarantor of the Obligations, all of the obligations and agreements of Guarantor are joint and several with such other guarantors.

Notwithstanding anything contained in this Guaranty to the contrary, the liability of Guarantor hereunder is limited to the proceeds of the Open-End Mortgage Deed, Assignment of Rents and Security Agreement from Guarantor to Merrill Lynch Business Financial Services, Inc. of even date herewith

This Guaranty shall be governed by the laws of the State of Illinois. **WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMERS OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMERS MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS.** Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of December 5, 2003.

Guarantor:
**FIRST WALLINGFORD CAPITAL CORPORATION**

Address:

59 Elm Street
New Haven, Connecticut 06510

**ROBERT V. MATTHEWS**
**Its President**

Witness:

Printed Name: _Stood D. Prittelstoue_

MERRILL LYNCH COMPLAINT AGAINST
MVH, FHCC, FWCC AND MATTHEWS

# EXHIBIT H

 **Merrill Lynch**

UNCONDITIONAL GUARANTY

**FOR VALUE RECEIVED**, and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** ("MLBFS") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with **MATTHEWS VENTURES HOLDINGS LLC**, a limited liability company organized and existing under the laws of the State of Connecticut (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as *"Customer"*) under: (a) that certain **TERM LOAN AND SECURITY AGREEMENT DATED AS OF OF EVEN DATE HEREWITH** between MLBFS and Customer (the "Loan Agreement"), (b) any *"Loan Documents"*, as that term is defined in the Loan Agreement including, without limitation, the **NOTE(S)** incorporated by reference in the Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Loan Documents (collectively, the "Guaranteed Documents"), **the undersigned, Robert V. Matthews,** ("*Guarantor*") hereby unconditionally **guarantees to MLBFS**: (i) the prompt and full payment when due by, acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the *"Obligations"*). Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any *"Bankruptcy Event"*, as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a *"Returned Payment"*), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customer or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated (*"MLPF&S"*), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

In consideration of the MLBFS' agreement to make the Loan, the Guarantor, for himself and his members and his attorneys, agents, heirs, predecessors, successors and assigns (the "Releasing Parties") does hereby remise, release and forever discharge MLBFS, its affiliated corporations (including, without limitation, Merrill Lynch and Co., Incorporated and MLPF&S) and their attorneys, agents, heirs, predecessors, successors and assigns (the "Released Parties") of and from any claims and any and all manner of action or actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity and in contract or tort or statute, or otherwise, which any of the Releasing Parties has had, now has or which it hereafter can, shall or may have against any of the Released Parties for or by reason of any matter, cause or thing arising prior to the execution of this Agreement and related in any way to all prior relationships and dealings among the Releasing Parties and the Released Parties, including, without limitation, under (a) this Agreement, (b) the Loan Documents, (c) the Loan Agreements referred to in the Loan Purpose, and (d) the security documents related thereto or the administration of the loans and financial accommodations thereunder.

This Guaranty shall be governed by the laws of the State of Illinois. **WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS.** Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of December 5, 2003.

Guarantor:

Address:

59 Elm Street
New Haven, Connecticut 06510

ROBERT V. MATTHEWS

Witness:

Printed Name: Steven P. Battreale

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP., a Delaware corporation,** )<br>)<br>)<br><br>**Plaintiff,** )<br>)<br><br>**v.** )<br>)<br>**MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company; FIRST HARTFORD CAPITAL CORP., a Connecticut corporation; FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation and ROBERT V. MATTHEWS,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Defendants.** ) | **Case No. 08-C-954**<br><br>**Honorable Judge Guzman**<br>**Magistrate Judge Schenkier** |

**NOTICE OF MOTION**

**TO:**    Defendants listed on attached Certificate of Service

 **PLEASE TAKE NOTICE** that on Thursday, March 27, 2008 at 9:30 a.m., we shall appear before the Honorable Ronald A. Guzman, or any Judge sitting in his stead in the courtroom usually occupied by him, Courtroom 1219 of the Everett Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and then and there present the **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT and PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL APPEARANCE**, a true and accurate copy of which was served upon you herewith.

Dated: March 18, 2008          Respectfully submitted,

                               MERRILL LYNCH COMMERCIAL FINANCE CORP.

                               By:    /s/J. Mark Fisher
                               J. Mark Fisher (Illinois Bar No. 3121711)
                               Melody R. Barron (Illinois Bar No. 6292346)
                               SCHIFF HARDIN LLP
                               6600 Sears Tower
                               Chicago, Illinois  60606-6473
                               (312) 258-5500 (phone)
                               (312) 258-5700 (facsimile)
                               mfisher@schiffhardin.com
                               mbarron@schiffhardin.com

                               *Its attorneys*

<u>EXHIBIT 2</u>

## CERTIFICATE OF SERVICE

I Melody R. Barron , an attorney, certify that I have this 18th day of March, 2008, caused the following to be served a copy of the foregoing **NOTICE OF MOTION** and **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT and PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL APPEARANCE** on the following parties by depositing same in the U.S. Mail, First Class postage prepaid, in envelopes addressed to :

Robert V. Matthews
101 Casa Bendita
Palm Beach, FL  33480

Matthews Ventures Holdings LLC
First Wallingford Capital Corporation
First Hartford Capital Corporation
59 Elm Street
New Haven, CT  06510

First Wallingford Capital Corporation
First Hartford Capital Corporation
Matthews Ventures Holdings LLC
c/o Francis Donnarumma
100 Grand Street, Suite 2F
Waterbury, CT  06702


/s/ Melody R. Barron _____
    Melody R. Barron

CH2\2380536.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP.,** a Delaware corporation,<br><br>　　　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**MATTHEWS VENTURES HOLDINGS LLC,** a Connecticut limited liability company; **FIRST HARTFORD CAPITAL CORP.,** a Connecticut corporation; **FIRST WALLINGFORD CAPITAL CORP.,** a Connecticut corporation and **ROBERT V. MATTHEWS,**<br><br>　　　　　　**Defendants.** | **Case No. 08-C-954**<br><br>**Honorable Judge Guzman<br>Magistrate Judge Schenkier** |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, plaintiff Merrill Lynch Commercial Finance Corp., successor to Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch" or "Plaintiff"), through counsel, hereby moves the Court to enter default judgment on its Complaint in favor of Plaintiff against Defendants Matthews Ventures Holdings LLC, First Hartford Capital Corp., First Wallingford Capital Corp. and Robert V. Matthews (collectively "Defendants") for their failure to answer or file a responsive pleading to Plaintiff's Complaint within the time required by law. In support of its Motion, the Plaintiff states as follows:

1.　　On Thursday, February 14, 2008, the Plaintiff filed a Complaint in this action seeking to recover for breach of contract.

2.　　On February 21, 2008, Robert V. Matthews was properly served with the Summons in a Civil Case and the Complaint. *See* Affidavit of Service, attached hereto as Exhibit A and filed as docket entry no. 8.

3.    On February 25, 2008, Matthews Ventures Holdings LLC, First Hartford Capital Corp., and First Wallingford Capital Corp. were each properly served with the Summons in a Civil Case and the Complaint. *See* Affidavits of Service, attached hereto as <u>Exhibits B, C and D</u> and filed as docket entry nos. 9 through 11.

4.    Federal Rule of Civil Procedure 12(a)(1) requires the Defendants to file their answer to the Complaint within twenty (20) days of service.

5.    More than twenty (20) days have passed since the Defendants were served with the Plaintiff's verified complaint. As of March 15, 2008, the Defendants have not filed an answer or otherwise appeared and pleaded to the complaint in this action.

6.    As more fully set forth in the Affidavit of Edmond Blough attached hereto as <u>Exhibit E</u>, as of the date of this motion, defendants jointly and severally are indebted to Merrill Lynch in the amount of $2,621,271.91, plus interest accruing at the rate of $726.08 per diem, plus attorneys' fees and costs of collection accruing after that date.

WHEREFORE, Merrill Lynch Commercial Finance Corp. respectfully requests that the Clerk of this Court enter a default judgment against Defendant Robert V. Matthews for failing to reply to Plaintiff's Complaint within the time prescribed by law.

Dated: March 18, 2008        Respectfully submitted,

                MERRILL LYNCH COMMERCIAL FINANCE CORP.

                By:   /s/J. Mark Fisher
                    J. Mark Fisher (Illinois Bar No. 3121711)
                    Melody R. Barron (Illinois Bar No. 6292346)
                    SCHIFF HARDIN LLP
                    6600 Sears Tower
                    Chicago, Illinois 60606-6473
                    (312) 258-5500 (phone)
                    (312) 258-5700 (facsimile)
                    mfisher@schiffhardin.com
                    mbarron@schiffhardin.com

                    *Its attorneys*

# Exhibit A

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

MERRILL LYNCH COMMERCIAL
FINANCE CORP.,
Plaintiff

V.

MATTHEWS VENTURES HOLDINGS LLC,
et. al,
Defendants

CASE NUMBER:

# 08 C 954

ASSIGNED JUDGE:

**JUDGE GUZMAN**
DESIGNATED
MAGISTRATE JUDGE: **MAGISTRATE JUDGE SCHENKIER**

TO: (Name and address of Defendant)

Mr. Robert V. Matthews
101 Casa Bendita
Palm Beach, FL 33480

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

J. Mark Fisher
Melody R. Barron
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois  60606-6473

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

**Michael W. Dobbins, Clerk**

(By) DEPUTY CLERK

**February 15, 2008**

Date

Exhibit A

AO 440  (Rev. 05/00)  Summons in a Civil Action

| RETURN OF SERVICE | *Rec'd 2-18-08 At 900 Am* |
|---|---|

| | DATE *2-20-08 At 438 pm* |
|---|---|
| Service of the Summons and complaint was made by me [1] | |

| NAME OF SERVER *(PRINT)* *Martin Totter* | TITLE *CPS #564 15 J.C., P.B.C., Fla* |
|---|---|

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:  *X   Adan Urbina*
   *Adan Urbina*

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): *Attempts 2-18-08 302pm not home spoke to Adan Urbina*

*2-18-08 550pm same , 2-19-08 715-730pm I spoke to 2 Different Women by*

*Security Phone & Camera at Front Gate*

*Adan Urbina Description White Male, 5'10", 190 LBS, Brown Hair, 45 Age*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on *February 20, 2008*          *Martin V Totter*
            Date                    *Signature of Server*

*5634 SW 114 Avenue*
            Address of Server
*Cooper City, Fla 33330*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Exhibit B

05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

MERRILL LYNCH COMMERCIAL
FINANCE CORP.,

              Plaintiff

V.

MATTHEWS VENTURES HOLDINGS LLC,
et. al,

              Defendants

CASE NUMBER:

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

# 08 C 954

**JUDGE GUZMAN**
**MAGISTRATE JUDGE SCHENKIER**

TO: (Name and address of Defendant)

Matthews Ventures Holdings LLC
59 Elm Street, New Haven, Connecticut 06510
c/o Francis Donnarumma
100 Grand Street, Suite 2F
Waterbury, CT 06702

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

J. Mark Fisher
Melody R. Barron
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois  60606-6473

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dobbins, Clerk**

**(By) DEPUTY CLERK**

**February 15, 2008**

**Date**

Exhibit B

00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | *2/25/08* |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| *Domenic J. Jannetry* | *State Marshal* |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant.  Place where served: *Francis Donnarumma @*
*27 State Street, Waterbury CT 06702*

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

☐ Other (specify): _____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| *4.85* | *30.00* | *103.05* |

*Endorsement: 120*   **DECLARATION OF SERVER**   *Copies: 67.00*

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on *2/25/08*
                 Date

Signature of Server   *Domenic J. Jannetry - State Marshal*

*27 State St, Waterbury CT 06702*
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Exhibit C

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

MERRILL LYNCH COMMERCIAL
FINANCE CORP.,

           Plaintiff

        V.

MATTHEWS VENTURES HOLDINGS LLC,
et. al,

           Defendants

CASE NUMBER:

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

## 08 C 954

**JUDGE GUZMAN**
**MAGISTRATE JUDGE SCHENKIER**

    TO: (Name and address of Defendant)

First Hartford Capital Corporation
59 Elm Street, New Haven, Connecticut 06510
c/o Francis Donnarumma
100 Grand Street, Suite 2F
Waterbury, CT 06702

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

J. Mark Fisher
Melody R. Barron
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois  60606-6473

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dobbins, Clerk**

**(By) DEPUTY CLERK**

**February 15, 2008**

**Date**

Exhibit C

AO 440  (Rev. 05/00)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | *2/25/08* |
| NAME OF SERVER *(PRINT)*  *Domenic J Jannetty* | TITLE  *State Marshal* |

Check one box below to indicate appropriate method of service

☒ Served personally upon the defendant.  Place where served: *Francis Donnarumma C*

*27 State Street Waterbury CT 06702*

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| *O* | *10.00* | *78.20* |

*Endorsements: 1.20*  **DECLARATION OF SERVER**  *Copies (6) .00*

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on *2/25/08* .
          _____
             Date

Signature of Server  *Domenic J Jannetty - State Marshal*

*27 State St. Waterbury CT 06702*
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Exhibit D

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

MERRILL LYNCH COMMERCIAL
FINANCE CORP.,
                            Plaintiff

                V.

MATTHEWS VENTURES HOLDINGS LLC,
et. al,
                            Defendants

CASE NUMBER:                **08 C 954**

ASSIGNED JUDGE:

DESIGNATED                  **JUDGE GUZMAN**
MAGISTRATE JUDGE:      **MAGISTRATE JUDGE SCHENKIER**

TO: (Name and address of Defendant)

First Wallingford Capital Corporation
59 Elm Street, New Haven, Connecticut 06510
c/o Francis Donnarumma
100 Grand Street, Suite 2F
Waterbury, CT 06702

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

J. Mark Fisher
Melody R. Barron
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, Illinois  60606-6473

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

**Michael W. Dobbins, Clerk**

**(By) DEPUTY CLERK**

**February 15, 2008**

**Date**

Exhibit D

AO 440  (Rev. 05/00)  Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE 2/25/08 |
|---|---|
| NAME OF SERVER *(PRINT)* Domenic J. Jannetty | TITLE State Marshal. |

*Check one box below to indicate appropriate method of service*

**X**  Served personally upon the defendant.  Place where served: *Francis Donnarumma @*
27 State Street, Waterbury CT. 06702

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL  O | SERVICES 10.00 | TOTAL 78.20 |
|---|---|---|

Endorsement 1.20.    **DECLARATION OF SERVER**    Copies: 67.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  2/25/08.
         Date

Signature of Server  Domenic J. Jannetty State Marshal

27 State St. Waterbury CT 06702
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Exhibit E

## AFFIDAVIT OF EDMOND J. BLOUGH

I, Edmond J. Blough, being duly sworn, deposes and states as follows:

1.     At all times pertinent to this case, I have been the Vice President of Merrill Lynch Commercial Finance Corp, successor to Merrill Lynch Business Financial Services Inc., plaintiff in this action ("Merrill Lynch").   I am submitting this affidavit in support of Merrill Lynch's Motion For Entry of Default Judgment against Matthews Ventures Holdings LLC ("MVH"), First Hartford Capital Corp. ("FHCC"), First Wallingford Capital Corp.("FWCC") and Robert V. Matthews ("Matthews") (collectively "Defendants").   Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the complaint in this action.

2.     As part of my duties, I have personal knowledge of the Promissory Notes and Term Loan and Security Agreements entered with MVH. I also have personal knowledge of the Forbearance Agreement between Merrill Lynch, Matthews and MVH.

3.     I also have personal knowledge of the Guarantees and Reaffirmation Agreements executed and delivered to Merrill Lynch by FHCC, FWCC and Matthews.

4.     After deducting all payments made by Defendants to Merrill Lynch through the date of this affidavit, the total amount due from the Defendants to Merrill Lynch under the Agreements is $2,621,271.91.  The components of this indebtedness follow.  Defendants owe Merrill Lynch a total principal balance of $2,376,263.07, plus an unpaid Commitment Fee of $16,875.00, plus an unpaid Amendment Fee of $25,000, plus $10,356.48 in late charges plus accrued interest of $83,783.22.   In addition, Defendants unreimbursed attorneys' fees and expenses relating to prior amendments or collection activities resolved by forbearance

Exhibit E

agreements is $82,783.22. Finally, since January 1, 2007, Merrill Lynch has incurred $25,770.75 in attorneys' fees and $454.34 in expenses in collection activities against Defendants.

5.      All of the amounts set forth in paragraph 4 above are past due.

6.      Interest continues to accrue on the Principal Debt at the Default Rate, which is $726.08 per diem as of the date of this affidavit.

I certify, under penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

Executed on this 18th day of March, 2008.

_____
Edmond J. Blough

Subscribed and sworn before me
this _____ day of _____, 2008

_____
Notary Public

CH2\2372367.2

> **OFFICIAL SEAL**
> MARLANA SANCHEZ-ZARINANA
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:11/15/10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP.**, a Delaware corporation, | ) ) ) |  |
|  | ) |  |
| **Plaintiff,** | ) ) | **Case No. 08-C-954** |
|  | ) |  |
| **v.** | ) ) | **Honorable Judge Guzman** |
|  | ) | **Magistrate Judge Schenkier** |
| **MATTHEWS VENTURES HOLDINGS LLC**, a Connecticut limited liability company; **FIRST HARTFORD CAPITAL CORP.**, a Connecticut corporation; **FIRST WALLINGFORD CAPITAL CORP.**, a Connecticut corporation and **ROBERT V. MATTHEWS,** | ) ) ) ) ) ) ) ) |  |
|  | ) |  |
| **Defendants.** | ) ) |  |

## <u>MOTION FOR LEAVE TO FILE AN ADDITIONAL APPEARANCE</u>

Melody R. Barron of Schiff Hardin LLP respectfully moves for leave to file her appearance on behalf of the plaintiff, Merrill Lynch Commercial Finance Corp.

Dated: March 18, 2008      Respectfully submitted,

MERRILL LYNCH COMMERCIAL FINANCE CORP.

By:   /s/ Melody R. Barron _____

       J. Mark Fisher (Illinois Bar No. 3121711)
       Melody R. Barron (Illinois Bar No. 6292346)
       SCHIFF HARDIN LLP
       6600 Sears Tower
       Chicago, Illinois  60606-6473
       (312) 258-5500 (phone)
       (312) 258-5700 (facsimile)
       mfisher@schiffhardin.com
       mbarron@schiffhardin.com

       *Its attorneys*

CH2\2380589.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MERRILL LYNCH COMMERCIAL FINANCE CORP., a Delaware corporation,**<br><br>　　　　　　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company; FIRST HARTFORD CAPITAL CORP., a Connecticut corporation; FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation and ROBERT V. MATTHEWS,**<br><br>　　　　　　　　　**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　**Case No. 08-C-954**<br><br>　　**Honorable Judge Guzman**<br>　　**Magistrate Judge Schenkier** |

**DEFENDANTS' ANSWER TO COMPLAINT AT LAW**

Defendants MATTHEWS VENTURES HOLDINGS LLC ("MVH"), FIRST HARTFORD CAPITAL CORP. ("FHCC"), FIRST WALLINGFORD CAPITAL CORP. ("FWCC") and ROBERT V. MATTHEWS ("Matthews"), by and through its undersigned counsel, states as follows for its Answer to Plaintiff's Complaint ("Complaint")

**THE PARTIES**

1.　　Merrill Lynch is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Chicago, Illinois and the assignee of the right, title and interest of Merrill Lynch Business Financial Services Inc. ("Lender") in, under and to the loans and the documents evidencing the loans and guaranties at issue in this case.

**ANSWER**: Defendants admit the allegations of paragraph 1.

**Exhibit 3**

2.      MVH is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.  The sole member of MVH is Matthews, a resident of the State of Florida.

**ANSWER**: Defendants admit the allegations of paragraph 2.


3.      FHCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

**ANSWER**: Defendants admit the allegations of paragraph 3.


4.      FWCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

**ANSWER**: Defendants admit the allegations of paragraph 4.


5.      Matthews is a resident of the State of Florida.

**ANSWER**: Defendants admit the allegations of paragraph 5.


**JURISDICTION AND VENUE**

6.      Jurisdiction over this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER**: Defendants admit the allegations of paragraph 6.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c) because Defendants' performance of a material part of their obligations to Merrill Lynch and a substantial part of the events giving rise to Merrill Lynch's claim occurred in this District.

**ANSWER**: Defendants admit the allegations of paragraph 7.


### COUNT I: BREACH OF CONTRACT AGAINST MVH

8.     On or about December 5, 2003, Lender and MVH entered into that certain Term Loan and Security Agreement (as amended, the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.  Unless otherwise defined herein, all capitalized terms in this complaint shall have the meanings ascribed to them in the Loan Agreement.

**ANSWER**: Defendants admit the allegations of paragraph 8.


9.     On or about December 5, 2003, Lender and MVH entered into that certain Collateral Installment Note (the "Note"), a true and correct copy of the Note is attached hereto as **Exhibit B**.

**ANSWER**: Defendants admit the allegations of paragraph 9.


10.     On or about February 22, 2006, Lender, Matthews and MVH entered into that certain Forbearance Agreement (the "Forbearance Agreement").  A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit C**.

**ANSWER**: Defendants admit the allegations of paragraph 10.

11.　　MVH breached the Loan Agreement and Forbearance Agreement by failing to make the payments due under those agreements on November 1, 2007 and December 1, 2007 totaling $102,482.08 (the "Installments").

**ANSWER**: Defendants admit the allegations of paragraph 11.

12.　　MVH also breached the Loan Agreement and Forbearance Agreement by failing to make payments due under those agreements equal to the Net Proceeds of the property commonly known as One and Three Long Wharf Drive, New Haven, Connecticut following the sale of that property on or about February 5, 2007 (the "Proceeds").

**ANSWER**: Defendants admit the allegations of paragraph 12.

13.　　Despite demand, MVH failed and refused to pay the Installments or the Proceeds. A true and correct copy of Lender's demand to MVH for payment (the "Demand and Notice of Acceleration") dated as of December 18, 2007 is attached hereto as **Exhibit D.**

**ANSWER**: Defendants admit the allegations of paragraph 13.

14.　　On December 28, 2007, all of the outstanding Obligations of MVH under the Loan Agreement and the indebtedness evidenced by the Note became due and payable pursuant to the notice and declaration contained in the Demand and Notice of Acceleration.

**ANSWER**: Defendants admit the allegations of paragraph 14.

15.　　As of December 28, 2007, MVH owed Obligations of $2,401,251.61 in principal, $47,698.91 in accrued interest as of the present time at the Default Rate as set out in the

Forbearance Agreement, $9,727.09 in late charges as set forth in the Loan Agreement, and a

$16,875.00 Commitment Fee, plus attorneys' fees and costs of collection.  Interest continues to

accrue on such principal amount at the Default Rate, which is $726.08 per diem as of the date of

this Complaint.

**ANSWER**: Defendants admit the allegations of paragraph 15.


16.     Lender and Merrill Lynch fully performed their obligations under the Loan

Agreement, Note and Forbearance Agreement.

**ANSWER**: Defendants admit the allegations of paragraph 16.


17.     As a result of MVH's breaches, Merrill Lynch has been damaged in the amount of

$2,475,552.61 plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 17.


WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its

favor and against MVH: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate

through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of

suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at

the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount
of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the
Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an
unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount
of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved
by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants
lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

## COUNT II: BREACH OF CONTRACT AGAINST FHCC

18.     As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 18.


19.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FHCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FHCC Guaranty").  A true and correct copy of the FHCC Guaranty is attached hereto as **Exhibit E**.

**ANSWER**: Defendants admit the allegations of paragraph 19.


20.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FHCC Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 20.


21.     Despite demand, FHCC failed and refused to pay the Obligations which it guaranteed pursuant to the FHCC Guaranty.  A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 21.

22.     As a result of FHCC's breach of the FHCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61 plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 22.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FHCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

### COUNT III: BREACH OF CONTRACT AGAINST FWCC

23.     As and for paragraph 23 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 23.

24.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FWCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FWCC Guaranty").  A true and correct copy of the FWCC Guaranty is attached hereto as **Exhibit G**.

**ANSWER**: Defendants admit the allegations of paragraph 24.


25.    On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FWCC Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 25.


26.    Despite demand, FWCC failed and refused to pay the Obligations which it guaranteed pursuant to the FWCC Guaranty.  A true and correct copy of Merrill Lynch's demand to FWCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 26.


27.    As a result of FWCC's breach of the FWCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 27.


WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FWCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs

of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22. The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

### COUNT IV: BREACH OF CONTRACT AGAINST MATTHEWS

28.    As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 17 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 28.


29.    On or about December 5, 2003, in connection with the Loan Agreement and Note, Matthews executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "Matthews Guaranty"). A true and correct copy of the Matthews Guaranty is attached hereto as **Exhibit H**.

**ANSWER**: Defendants admit the allegations of paragraph 29.


30.    On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the reaffirmation (the "Reaffirmation Agreement") whereby they reaffirmed the effectiveness of, among other things, the Matthews Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 30.

31.     Despite demand, Matthews failed and refused to pay the Obligations which he guaranteed pursuant to the Matthews Guaranty.  A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 31.


32.     As a result of Matthews' breach of the Matthews Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 33.


WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against Matthews: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

Dated: April  ___, 2008          MATTHEWS VENTURES HOLDINGS LLC
                                 FIRST HARTFORD CAPITAL CORP.
                                 FIRST WALLINGFORD CAPITAL CORP.
                                 ROBERT V. MATTHEWS


-

                                 By:_____
                                         Joel C. Griswold
                                         Bell, Boyd & Lloyd LLP
                                         70 W. Madison St., 3100
                                         Chicago, IL  60602
                                         Tel.: 312-807-4238
                                         Email: jgriswold@bellboyd.com


                                         *Their  attorney*

CH2\2412579.4

**MERRILL LYNCH MOTION
FOR ENTRY OF JUDGMENT ON THE PLEADINGS
AND CONFESSION OF JUDGMENT**

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERRILL LYNCH COMMERCIAL FINANCE CORP., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEWS VENTURES HOLDINGS LLC, a Connecticut limited liability company; FIRST HARTFORD CAPITAL CORP., a Connecticut corporation; FIRST WALLINGFORD CAPITAL CORP., a Connecticut corporation and ROBERT V. MATTHEWS,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. 08-C-954<br><br>　　Honorable Judge Guzman<br>　　Magistrate Judge Schenkier |

## DEFENDANTS' ANSWER TO COMPLAINT AT LAW

Defendants, MATTHEWS VENTURES HOLDINGS LLC ("MVH"), FIRST HARTFORD CAPITAL CORP. ("FHCC"), FIRST WALLINGFORD CAPITAL CORP. ("FWCC") and ROBERT V. MATTHEWS ("Matthews"), by and through their undersigned counsel, state as follows for their Answer to Plaintiff, Merrill Lynch Commercial Finance Corporation's Complaint ("Complaint").

## THE PARTIES

1.　　Merrill Lynch is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Chicago, Illinois and the assignee of the right, title and interest of Merrill Lynch Business Financial Services Inc. ("Lender") in, under and to the loans and the documents evidencing the loans and guaranties at issue in this case.

**ANSWER**: Defendants admit the allegations of paragraph 1.

2.      MVH is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.  The sole member of MVH is Matthews, a resident of the State of Florida.

**ANSWER**: Defendants admit the allegations of paragraph 2.


3.      FHCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

**ANSWER**: Defendants admit the allegations of paragraph 3.


4.      FWCC is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in New Haven, Connecticut.

**ANSWER**: Defendants admit the allegations of paragraph 4.


5.      Matthews is a resident of the State of Florida.

**ANSWER**: Defendants admit the allegations of paragraph 5.


**JURISDICTION AND VENUE**

6.      Jurisdiction over this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER**: Defendants admit the allegations of paragraph 6.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c) because Defendants' performance of a material part of their obligations to Merrill Lynch and a substantial part of the events giving rise to Merrill Lynch's claim occurred in this District.

**ANSWER**: Defendants admit the allegations of paragraph 7.


## COUNT I: BREACH OF CONTRACT AGAINST MVH

8.      On or about December 5, 2003, Lender and MVH entered into that certain Term Loan and Security Agreement (as amended, the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.  Unless otherwise defined herein, all capitalized terms in this complaint shall have the meanings ascribed to them in the Loan Agreement.

**ANSWER**: Defendants admit the allegations of paragraph 8.


9.      On or about December 5, 2003, Lender and MVH entered into that certain Collateral Installment Note (the "Note"), a true and correct copy of the Note is attached hereto as **Exhibit B**.

**ANSWER**: Defendants admit the allegations of paragraph 9.


10.      On or about February 22, 2006, Lender, Matthews and MVH entered into that certain Forbearance Agreement (the "Forbearance Agreement").  A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit C**.

**ANSWER**: Defendants admit the allegations of paragraph 10.

11.     MVH breached the Loan Agreement and Forbearance Agreement by failing to make the payments due under those agreements on November 1, 2007 and December 1, 2007 totaling $102,482.08 (the "Installments").

**ANSWER**: Defendants admit the allegations of paragraph 11.


12.     MVH also breached the Loan Agreement and Forbearance Agreement by failing to make payments due under those agreements equal to the Net Proceeds of the property commonly known as One and Three Long Wharf Drive, New Haven, Connecticut following the sale of that property on or about February 5, 2007 (the "Proceeds").

**ANSWER**: Defendants admit the allegations of paragraph 12.


13.     Despite demand, MVH failed and refused to pay the Installments or the Proceeds.  A true and correct copy of Lender's demand to MVH for payment (the "Demand and Notice of Acceleration") dated as of December 18, 2007 is attached hereto as **Exhibit D.**

**ANSWER**: Defendants admit the allegations of paragraph 13.


14.     On December 28, 2007, all of the outstanding Obligations of MVH under the Loan Agreement and the indebtedness evidenced by the Note became due and payable pursuant to the notice and declaration contained in the Demand and Notice of Acceleration.

**ANSWER**: Defendants admit the allegations of paragraph 14.


15.     As of December 28, 2007, MVH owed Obligations of $2,401,251.61 in principal, $47,698.91 in accrued interest as of the present time at the Default Rate as set out in the

Forbearance Agreement, $9,727.09 in late charges as set forth in the Loan Agreement, and a

$16,875.00 Commitment Fee, plus attorneys' fees and costs of collection.  Interest continues to

accrue on such principal amount at the Default Rate, which is $726.08 per diem as of the date of

this Complaint.

**ANSWER**: Defendants admit the allegations of paragraph 15.

16.     Lender and Merrill Lynch fully performed their obligations under the Loan

Agreement, Note and Forbearance Agreement.

**ANSWER**: Defendants admit the allegations of paragraph 16.

17.     As a result of MVH's breaches, Merrill Lynch has been damaged in the amount of

$2,475,552.61 plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 17.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its

favor and against MVH: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate

through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of

suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at

the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount
of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the
Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an
unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount
of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved
by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants
lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

## COUNT II: BREACH OF CONTRACT AGAINST FHCC

18.     As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 18.


19.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FHCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FHCC Guaranty"). A true and correct copy of the FHCC Guaranty is attached hereto as **Exhibit E**.

**ANSWER**: Defendants admit the allegations of paragraph 19.


20.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FHCC Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 20.


21.     Despite demand, FHCC failed and refused to pay the Obligations which it guaranteed pursuant to the FHCC Guaranty. A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 21.

22.     As a result of FHCC's breach of the FHCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61 plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 22.


WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FHCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

### COUNT III: BREACH OF CONTRACT AGAINST FWCC

23.     As and for paragraph 23 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 16 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 23.


24.     On or about December 5, 2003, in connection with the Loan Agreement and Note, FWCC executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "FWCC Guaranty").  A true and correct copy of the FWCC Guaranty is attached hereto as **Exhibit G**.

**ANSWER**: Defendants admit the allegations of paragraph 24.


25.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the Reaffirmation Agreement whereby they reaffirmed the effectiveness of, among other things, the FWCC Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 25.


26.     Despite demand, FWCC failed and refused to pay the Obligations which it guaranteed pursuant to the FWCC Guaranty.  A true and correct copy of Merrill Lynch's demand to FWCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 26.


27.     As a result of FWCC's breach of the FWCC Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 27.


WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against FWCC: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs

of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22. The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

### COUNT IV: BREACH OF CONTRACT AGAINST MATTHEWS

28.     As and for paragraph 18 of the Complaint, Merrill Lynch repeats and realleges paragraphs 1 through 17 as if fully set forth herein.

**ANSWER**: Defendants admit the allegations of paragraph 28.


29.     On or about December 5, 2003, in connection with the Loan Agreement and Note, Matthews executed and delivered to Lender a guaranty of prompt payment and performance by MVH of all of its obligations to Lender (the "Matthews Guaranty"). A true and correct copy of the Matthews Guaranty is attached hereto as **Exhibit H**.

**ANSWER**: Defendants admit the allegations of paragraph 29.


30.     On or about February 22, 2006 in connection with the Forbearance Agreement, FHCC, FWCC and Matthews executed and delivered to Lender the reaffirmation (the "Reaffirmation Agreement") whereby they reaffirmed the effectiveness of, among other things, the Matthews Guaranty of the Obligations.

**ANSWER**: Defendants admit the allegations of paragraph 30.

31.     Despite demand, Matthews failed and refused to pay the Obligations which he guaranteed pursuant to the Matthews Guaranty.  A true and correct copy of Merrill Lynch's demand to FHCC for payment (the "Guarantor Demand") dated as of January 14, 2008 is attached hereto as **Exhibit F.**

**ANSWER**: Defendants admit the allegations of paragraph 31.

32.     As a result of Matthews' breach of the Matthews Guaranty, Merrill Lynch has been damaged in the amount of $2,475,552.61, plus interest at the Default Rate and its costs of collection.

**ANSWER**: Defendants admit the allegations of paragraph 33.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter judgment in its favor and against Matthews: in the amount of  (a) $2,475,552.61, plus (b) interest at the Default Rate through the entry of judgment, plus (c) Merrill Lynch's reasonable attorneys' fees and costs of suit in an amount to be proven up, and (d) post-judgment interest from the date of judgment at the statutory rate until paid.

**ANSWER**: Defendants acknowledge and admit that, as of March 18, 2008, the principal amount of the Obligations is $2,376,263.07, consisting of Interest accrued on the principal amount of the Obligations in the amount of $899.21.90, Late Fees assessed in the amount of $10,356.48, an unpaid Commitment Fee in the amount of $16,875.00, an unpaid Amendment Fee in the amount of $25,000.00 and Merrill Lynch's unreimbursed attorneys' fees in collection activities resolved by forbearance agreements dated prior to 2008 in the amount of $83,782.22.  The Defendants lack knowledge of the amount of Plaintiff's attorney's fees incurred after 2007.

Dated: April 9, 2008        Respectfully submitted,

MATTHEWS VENTURES HOLDINGS LLC
FIRST HARTFORD CAPITAL CORP.
FIRST WALLINGFORD CAPITAL CORP.
ROBERT V. MATTHEWS

-

By:  /s/ Joel C. Griswold
       One of Their Attorneys

(*Local Counsel*)

Paul J. Walsen
Joel C. Griswold
BELL, BOYD & LLOYD LLP
Three First National Plaza
70 West Madison Street, Suite 3100
Chicago, Illinois  60606
(312) 372-1121

CH2\2412579.3

**MERRILL LYNCH MOTION
FOR ENTRY OF JUDGMENT ON THE PLEADINGS
AND CONFESSION OF JUDGMENT**

# EXHIBIT 3

## <u>AFFIDAVIT OF EDMOND J. BLOUGH</u>

I, Edmond J. Blough, being duly sworn, deposes and states as follows:

1.      At all times pertinent to this case, I have been the Vice President of Merrill Lynch Commercial Finance Corp, successor to Merrill Lynch Business Financial Services Inc., plaintiff in this action ("Merrill Lynch").

2.      I am submitting this affidavit in support of Merrill Lynch's Motion For Entry of Default Judgment (the "Motion") against Matthews Ventures Holdings LLC ("MVH"), First Hartford Capital Corp. ("FHCC"), First Wallingford Capital Corp.("FWCC") and Robert V. Matthews ("Matthews") (collectively "Defendants").

3.      As part of my duties, I have personal knowledge of the Promissory Notes and Term Loan and Security Agreements entered with MVH, which are attached as Exhibits to the Answer. I also have personal knowledge of the Forbearance Agreement between Merrill Lynch, Matthews and MVH (the "Forbearance Agreement"), a true and correct copy of which is attached to the Motion as <u>Exhibit 1</u>. Unless otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Forbearance Agreement in this action.

4.      I also have personal knowledge of the Defendants' Answer to Complaint At Law (the "Answer"), a true and correct copy of which is attached to the Motion as <u>Exhibit 2</u>.

5.      I also have personal knowledge of the Guarantees and Reaffirmation Agreements executed and delivered to Merrill Lynch by FHCC, FWCC and Matthews, which are attached as Exhibits to the Answer.

EXHIBIT 3

6.     A "Termination Event" occurred under the Forebearance Agreement on May 27, 2008, terminating Merrill Lynch's forbearance, because Defendants had not repaid in full the Liabilities owed to Merrill Lynch.

7.     After deducting all payments made by Defendants to Merrill Lynch through the date of this affidavit, the total amount due from the Defendants to Merrill Lynch under the Agreements as of Wednesday, June 4, 2008 will be $2,696,758.14.   The components of this indebtedness follow.  Defendants owe Merrill Lynch a total principal balance of $2,376,263.07, plus an unpaid Commitment Fee of $16,875.00, plus an unpaid Amendment Fee of $25,000, plus $15,209.04 in late charges plus accrued interest of $136,044.50.  Defendants also owe unreimbursed attorneys' fees and expenses relating to amendments or collection activities resolved by forbearance agreements in the amount of $101,639.03.   Finally Defendants owe $25,727.50 in attorneys' fees and costs of suit in this action.

8.     All of the amounts set forth in paragraph 6 above are past due.

9.     Interest continues to accrue on the Principal Debt at the Default Rate, which is $660.07 per diem as of the date of this affidavit.

[Signature Page Follows]

I certify, under penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

Executed on this 30th day of May, 2008.

Edmond J. Blough

Subscribed and sworn before me
this ___ day of _____, 2008

Notary Public

OFFICIAL SEAL
MARLANA SANCHEZ-ZARINANA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/15/10

**MERRILL LYNCH MOTION
FOR ENTRY OF JUDGMENT ON THE PLEADINGS
AND CONFESSION OF JUDGMENT**

# EXHIBIT 4

CONFESSION OF JUDGMENT

Defendants Matthews Ventures Holdings LLC, First Hartford Capital Corporation, First Wallingford Capital Corporation and Robert V. Matthews by J. Mark Fisher, Attorney at Law, waives service of process and confesses that there is due from each of these Defendant to Plaintiff Merrill Lynch Commercial Finance Corporation.

| | |
|---|---|
| Principal | $2,376,263.07 |
| Interest through June 4, 2008 | 136,044.50 |
| Commitment Fee | 16,875.00 |
| Amendment Fee | 25,000.00 |
| Late Charges | 15,209.04 |
| Unpaid Attorneys' fees for prior amendments, forbearance agreements, etc. | 101,639.03 |
| Attorneys' fees and costs in this action | 25,727.50 |
| TOTAL AMOUNT DUE | $2,696,758.14 |

Defendant agrees that judgment may be entered without process for the total above and costs of suit and releases and waives all rights as authorized in the Promissory Note.

_____/s/ J. Mark Fisher_____
Attorney at Law

EXHIBIT 4